Docket No. 89350–Agenda 8–January 2001.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TIMOTHY TRAINOR, Appellee.

Opinion filed May 24, 2001.

JUSTICE FITZGERALD delivered the opinion of the court:

At issue in this appeal is whether, pursuant to a defendant’s filing of an application for recovery under the Sexually Dangerous Persons Act (725 ILCS 205/3.01 (West 1998)), the State can obtain summary judgment. In the present situation, the La Salle County circuit court granted the State’s motion for summary judgment following Timothy Trainor’s application for recovery. The appellate court reversed the circuit court’s decision, holding that “summary judgment is a civil remedy that has no place in sexually dangerous person proceedings.” 312 Ill. App. 3d 860, 862. For the following reasons, we affirm the decision of the appellate court, which remanded the cause for a jury trial on defendant’s application.

BACKGROUND

Defendant was adjudicated a sexually dangerous person in May 1984. A jury found that he was still dangerous and the circuit court denied his petition for recovery. In May 1995, defendant filed a second petition for recovery. The State filed a motion to dismiss, which the trial court granted. The appellate court affirmed the trial court’s decision. 
People v Trainor
, No. 3–95–0629 (1997) (unpublished order under Supreme Court Rule 23). Thereafter, in May 1998, defendant filed a third petition for recovery. In his petition, defendant stated that for the past 14 years he participated in therapy when it was offered to him and that he made significant progress in controlling his inappropriate sexual behavior. Defendant further stated in the petition that he had recovered to the point where he could be placed in a less restrictive environment as part of his reintegration into society. Along with the petition, defendant filed a motion for a jury trial and appointment of an independent expert to evaluate his progress. Defendant maintained that the psychologist retained by the Department of Corrections (Department) to evaluate defendant was biased against him.

In response, the Department filed a socio-psychological evaluation signed by the Department’s administrative psychologist, psychiatrist, a social service worker, the assistant warden and the warden at Big Muddy River Correctional Center. The report described the method of treatment received by defendant and explained the stage of “recovery” that defendant had achieved. The report concluded that defendant was not “recovered.” It further noted that defendant was at a high risk to reoffend if placed into mainstream society.

The State filed a motion for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 1998)) arguing that there was no genuine issue as to any material fact and that the State was entitled to judgment as a matter of law. In support of the motion the State maintained that the Department’s report indicated that defendant had not recovered and was still deemed sexually dangerous. The State further argued that defendant presented no credible evidence that would permit a determination on the petition that he is no longer sexually dangerous or that would create a genuine issue of material fact. Rather, the State argued, defendant merely presented his own allegation that he was recovered. Such an bald assertion, unsupported by other evidence, was insufficient to overcome a summary judgment motion.

In granting the motion for summary judgment the trial court stated:

“The law does state that Mr. Trainor can file an application showing recovery, however, on motion[s] for summary judgment the application for recovery can be dismissed before a jury is impaneled or before the issue goes to a jury. Courts have ruled that that is [a] permissible procedure.

* * *

The defendant has made significant progress in his therapy, is learning to control his sexually inappropriate behavior which led him to being a sexually dangerous person. Those are the allegations contained in Mr. Trainor’s petition for recovery. However, when you look to the report which was ordered by this Court and the statute provides for ***there are several things that the report which was completed by the members of the Department of Corrections as far as the rehabilitations treatment program, there are several things contained in the report which state to the contrary.

* * *

I see no genuine issue of material fact, and in light of the Department of Corrections report I see no substantial change, and apparently it’s just the same thing as before. There is no marked improvement. Mr. Trainor is not entitled to any court-appointed expert, independent of the Department of Corrections. If he wishes privately to obtain one, he can always do so; but it’s never been done. So what I have in front of me is the Department of Corrections report. It does not indicate any genuine issue of material fact. The motion for summary judgment will be granted in this matter.”

Defendant appealed. The appellate court reversed the decision of the trial court and remanded the cause for further proceedings. The appellate court concluded that summary judgment is inappropriate in sexually dangerous person proceedings because it deprives a defendant of his “statutory method of regaining his liberty.” 312 Ill. App. 3d at 862. Additionally, the appellate court ruled that defendant was not entitled to an independent expert. This appeal followed.

ANALYSIS

I. Sexually Dangerous Persons Act

The question before us is whether the State is entitled to move for summary judgment under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 
et seq
. (West 1998)). In order to answer that question, we must review the legislature’s purpose and intent in creating the Act.

A sexually dangerous person is defined, under the Act, as a person who suffers from a mental disorder coupled with propensities to the commission of sex offenses and has demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. 725 ILCS 205/1.01 (West 1998). The Act’s purpose is twofold: (1) to protect the public by sequestering a sexually dangerous person until such a time as the individual is recovered and released, and (2) to subject sexually dangerous persons to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated. 
People v. Cooper
,132 Ill. 2d 347, 355 (1989).

The Illinois legislature first created a civil commitment statute for sex offenders, known as the criminal sexual psychopathic persons act, in 1938. See Ill. Rev. Stat. 1939, ch. 38, par. 820. The 1938 Act was revised in 1955 and thereafter became the Sexually Dangerous Persons Act. Ill. Rev. Stat. 1955, ch. 38, pars. 820.01 through 825e. The revised act further provided that the proceedings be civil in nature. Despite being civil in nature, however, an accused was provided with some of the same procedural rights guaranteed in a criminal proceeding, such as the right to a trial by jury and the right to counsel. Ill. Rev. Stat. 1955, ch. 38, par. 822.01.

In 1963 the Act was amended to include a provision that quashed all outstanding indictments that served as the basis for an offender’s civil commitment proceeding. See Ill. Rev. Stat. 1963, ch. 38, par. 105–9. This change altered the aim of the Act because it focused on the rehabilitative treatment of the offender rather than punishment. Nearly two decades later, in 1982, the Act was again amended. This time the amendment added a requisite burden of proof. The amendment designated that before one could be committed as a sexually dangerous person, the State must prove the same beyond a reasonable doubt. Ill. Rev. Stat. 1983, ch. 38, pars. 105–3.01.

In creating and amending the Act, the Illinois legislature intended that, instead of being criminally punished for their criminal sexual offenses, sexually dangerous persons be committed to the Department for treatment until they are no longer considered sexually dangerous. 
People v. Cooper
, 132 Ill. 2d 347, 355 (1989). The legislature classified sexually dangerous persons as people who suffer from a mental illness and need specialized care and commitment. 
Cooper
, 132 Ill. 2d at 355. Thus, the Act does not promote traditional aims of punishment, such as retribution or deterrence. Rather, under the Act, the State has a statutory obligation to provide care and treatment for persons adjudged sexually dangerous. This care is designed to effect recovery in a facility set aside to provide psychiatric care. 
Allen v. Illinois
, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986).

II. The State’s Motion for Summary Judgment

The question of whether the State can obtain summary judgment on defendant’s application for recovery under the Act is a legal one which we review 
de novo
. 
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1, 7 (1997). The purpose of summary judgment is to determine whether there are any genuine issues of material fact. 
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986). Summary judgment should be granted when “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2–1005(c) (West 1998). If the party moving for summary judgment supplies facts which, if left uncontradicted, would entitle the party to a judgment as a matter of law, the opposing party cannot rely on its pleadings alone to raise an issue of material fact. 
Purtill
, 111 Ill. 2d at 240.

 Here, the State moved for summary judgment on the basis that, “The petitioner has no credible evidence 
*** 
pursuant to which could create or permit a determination that he is no longer sexually dangerous, nor which could create a genuine issue of material fact of the same.” In support of this motion, the State cited to an appellate court case that upheld a trial court’s ruling on a similar motion for summary judgment. 
People v. Savage
, 277 Ill. App. 3d 63, 67 (1995). In 
Savage
, the trial court noted that the defendant failed to offer any substantive evidence to support his allegation that he had recovered. The trial court, therefore, granted summary judgment after finding that “ ‘[t]here is absolutely no basis whatsoever in the record to suggest that there is ***a triable issue of material fact in a civil proceeding.’ ” 
Savage
, 277 Ill. App. 3d at 67.

As an initial matter, we note that the appellate court in 
Savage
 approached the recovery proceeding from the perspective that the defendant had the burden to establish that he had recovered from his sexual affliction and that he had failed to do so. The appellate court cited, with approval, the trial court’s finding that “ ‘the defendant has not offered any substantive evidence of any kind in support of his bald allegation that he is recovered.’ ” Failing to meet that burden, and create a triable issue of fact, the appellate court held that a motion for summary judgment was appropriate. 
Savage
, 277 Ill. App. 3d at 67.

The State’s reliance on the 
Savage
 case reveals a pervasive underlying issue that must be addressed, namely, whether the defendant or the State bears the burden of proof in a recovery proceeding. To answer this threshold question, we carefully examine the structure and language of the Act.

a. Commitment Proceeding

The Act is composed of two separate, yet interrelated proceedings. The first part involves the commitment proceeding. During this proceeding, the defendant is committed to the Department and is adjudicated sexually dangerous. This proceeding is triggered when the State files a petition for commitment. A petition can be filed “[w]hen any person is charged with a criminal offense and it [appears] *** that such person is a sexually dangerous person, within the meaning of [the] Act.” 725 ILCS 205/3 (West 1998). This petition must set forth facts “tending to show that the person named is a sexually dangerous person.” 725 ILCS 205/3 (West 1998). The Act specifies that either the State’s Attorney or the Attorney General may seek an involuntary, indeterminate institutional commitment in lieu of criminal prosecution if the person is charged with a criminal offense and is believed to be sexually dangerous. 725 ILCS 205/4 (West 1998).

While the question of whether an individual is a sexually dangerous person is one of fact, it is one which, by its nature, cannot be answered by a court or jury without hearing the opinions of people who have a special knowledge in the field of mental disorders and sexual aberration. 
People v. Covey
, 34 Ill. 2d 195 (1966). Thus, after filing a petition alleging sexual dangerousness, the trial court must appoint two psychiatrists to make a personal examination of the person so charged and determine whether such person is sexually dangerous. 725 ILCS 205/4 (West 1998).

The Act states that “[t]he psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent.” 725 ILCS 205/4 (West 1998). Once the psychiatrists file their report and provide the respondent with a copy, a hearing is held to determine the defendant’s sexual dangerousness. 725 ILCS 205/4 (West 1998). The reports of the psychiatrists must be introduced by direct testimony. 
People v. Pearson
, 65 Ill. App. 2d 264 (1965). Nonetheless, although the statute provides that two qualified psychiatrists shall be appointed to examine the defendant, there is no requirement that both psychiatrists shall testify; testimony of one may provide a 
prima facie
 case in the absence of contradictory reports. 
People v. Olmstead
, 32 Ill. 2d 306 (1965).

Once the hearing begins, section 3.01 of the Act controls. Section 3.01 specifies that the proceedings under the Act are civil. It states,

“The proceedings under this Act shall be civil in nature[;] however, the burden of proof required to commit a defendant to confinement as a sexually dangerous person shall be the standard of proof required in a criminal proceedings of proof beyond a reasonable doubt. The provisions of the Civil Practice Law, and all existing and future amendments of that Law and modifications thereof and the Supreme Court Rules now or hereafter adopted in relation to that Law[,] shall apply to all proceedings hereunder except as otherwise provided in this Act.” 725 ILCS 205/3.01 (West 1998).

Section 5 of the Act mandates that the defendant is accorded certain rights:

“The respondent in any proceedings under this Act shall have the right to demand a trial by jury and to be represented by counsel. At the hearing on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were inflicted.” 725 ILCS 205/5 (West 1998).

These rights are conferred upon the defendant/respondent because, although the proceedings under the Act are civil in nature, they may result in deprivation of liberty and incarceration in the penitentiary for psychiatric treatment. Therefore, a respondent under the Act must be accorded the essential protections available at a criminal trial. See 
Olmstead
, 32 Ill. 2d at 312; 
People v. Capoldi
, 37 Ill. 2d 11 (1967); 
People v. Nastasio
, 19 Ill. 2d 524 (1960). Moreover, due process under both the United States and Illinois Constitutions require that the loss of liberty which results from civil commitment under the Act be justified by proof beyond a reasonable doubt. 725 ILCS 205/3.01 (West 1998); 
People v. Pembrock
, 62 Ill. 2d 317, 321 (1976).

In discussing the Act, the Seventh Circuit Court of Appeals in 
United States ex rel. Stachulak v. Coughlin
, 520 F.2d 931, 937 (7th Cir. 1975), stated:

“We recognize that society has a substantial interest in the protection of its members from dangerous deviant sexual behavior. But when the stakes are so great for the individual facing commitment, proof of sexual dangerousness must be sufficient to produce the highest recognized degree of certitude.”

The Seventh Circuit further stated, and we agree, that the right to due process entitles the defendant to the right to confront and cross-examine witnesses testifying against him, the right against self-incrimination and the right to a speedy trial. 
Coughlin v. Stachulak
, 424 U.S. 947, 47 L. Ed. 2d 354, 96 S. Ct. 1419 (1976). We note that our legislature intended rigid adherence to rules of evidence and that every necessary element of the State’s petition be proved by competent evidence. 
People v. Bruckman
, 33 Ill. 2d 150 (1965); 
People v. Pearson
, 65 Ill. App. 2d 264 (1965).

If the State succeeds on its petition to adjudicate the respondent sexually dangerous, the respondent is committed to the custody of the Director of Corrections as guardian. Section 8 of the Act states,

“The Director of Corrections as guardian shall keep safely the person so committed until the person has recovered and is released as hereinafter provided. The Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery. The Director may place that ward in any facility in the Department of Corrections or portion thereof set aside for the care and treatment of sexually dangerous persons.” 725 ILCS 205/8 (West 1998).

The respondent is committed for an indeterminate time until the time the respondent has recovered and is released under the Act. 725 ILCS 205/9 (West 1998). We now turn to the second part of the Act, the recovery proceeding.

b. Recovery Proceeding

 Once a person has been adjudicated sexually dangerous, that person may file, at any time, an application showing that he has recovered and requesting release. 725 ILCS 205/9 (West 1998). When such an application is filed, the psychiatrist, sociologist, psychologist and warden of the institution where the applicant is confined must prepare a socio-psychiatric report concerning the applicant. 725 ILCS 205/9 (West 1998). Section 9 of the Act states,

“An application in writing setting forth facts showing that such sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. Upon receipt thereof, the clerk of the court shall cause a copy of the application to be sent to the Director of the Department of Corrections. The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. *** The court shall set a date for the hearing upon such application and shall consider the report so prepared under the direction of the Director of the Department of Corrections and any other relevant information submitted by or on behalf of such applicant. If the patient is found to be no longer dangerous, the court shall order that he be discharged.” 725 ILCS 205/9 (West 1998).

We note that both the commitment and recovery proceedings involve the “paramount factual issue of the mental condition of the defendant; both involve his liberty.” 
Olmstead
, 32 Ill. 2d at 313. The first proceeding, the commitment of the defendant as a sexually dangerous person, deprives the defendant of his liberty. The second proceeding, the recovery phase, gives a defendant applying for recovery a chance to regain his freedom.

In 
Olmstead
, this court decided the issue of whether section 5 of the Act, the right to demand a jury trial and the appointment of counsel in the commitment proceeding, applies to a defendant who files an application for recovery under section 9 of the Act. The defendant, in 
Olmstead
, was adjudicated sexually dangerous pursuant to the Act and the trial court dismissed his application for recovery before appointing counsel and granting the defendant a jury trial. In determining whether the trial court erred in striking the defendant’s application for recovery, we concluded that in devising the statute, “the legislature *** intended the right to counsel and a jury to apply to 
both
 the original petition proceedings and the application for discharge.” (Emphasis added.) 
Olmstead
, 32 Ill. 2d at 313.

In 
Capoldi
, we reiterated the principle that persons proceeding under the Act must be accorded the same procedural safeguards that are available to a defendant in a criminal trial. In 
Capoldi
, the defendant filed an application for recovery under section 9 of the Act that the trial court dismissed without a hearing. We noted that once the application has been filed, the court “shall” set a date for the hearing and concluded that upon filing of the application for recovery, the trial court should have held a hearing to determine if the defendant had recovered. 
Capoldi
, 37 Ill. 2d at 18. We further held that at the recovery hearing, the defendant is entitled to a court-appointed attorney and the right to demand a trial by jury pursuant to section 5 of the Act. 
Capoldi
, 37 Ill. 2d at 18.

 Because both the commitment proceeding and the recovery proceeding implicate a defendant’s liberty interest, we have continuously emphasized in 
Olmstead
 and its progeny that the legislature, in enacting the Act, clearly intended section 5 of the Act to apply 
both
 at the commitment proceeding and the recovery proceeding. 
Olmstead
, 32 Ill. 2d at 313; accord 
People v. Shiro
, 52 Ill. 2d 279, 282 (1972) (when a defendant files an application for recovery, he must be granted a jury trial if so requested). With these crucial principles in mind, we next turn to a review of the burden of proof during the proceedings under the Act.

c. Burden of Proof

There is no dispute that the language in the Act clearly states that the State must prove a defendant sexually dangerous beyond a reasonable doubt during the commitment proceeding. 725 ILCS 205/3.01 (West 1998). The Act does not explicitly state, however, where the burden of proof lies in a recovery proceeding.

 In deciding this issue, we are guided by the fundamental rule of statutory construction–to ascertain and give effect to the true intent and meaning of the legislature. 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189 (1990). We look first to the words chosen by the legislature and used in the statute itself as the best indicators of what the statute means. The statutory language, however, is a reliable indicator of true meaning only when it is read in the context of the entire Act. See 
Kraft, Inc.
, 138 Ill. 2d at 189 Thus, sections 3, 5 and 9 of the Act must be read in conjunction with one another and their language so construed as to make them harmonious and consistent. Their words cannot be read in a fashion that would render other words or phrases, meaningless, redundant, or superfluous. 
Kraft, Inc.
, 138 Ill. 2d at 189.

 Section 9 of the Act states that during the recovery proceeding, the “patient” (defendant) shall file an “application” for recovery. 725 ILCS 205/9 (West 1998). In resolving issues concerning applications for recovery, however, courts, including this court, have used the phrase “petition for recovery” when discussing an “application” for recovery. See, 
e.g.
, 
People v. Cooper
, 132 Ill. 2d 347 (1989); 
Shiro
, 52 Ill. 2d at 282; 
People v. Sizemore
, 311 Ill. App. 3d 917 (2000); 
People v. Tunget
, 287 Ill. App. 3d 533 (1997). 
People v. Hannan
, 184 Ill. App. 3d 937 (1989); 
People v. Parrott
, 108 Ill. App. 3d 222 (1982). The interchangeable use of the terms “petition” and “application” over the years has led to a misinterpretation of the burden of proof that is required during a recovery proceeding. It has also led to a misunderstanding of the nature of the proceedings that the legislature intended.

 A “petition” is defined as “[a] formal written request presented to a court or other official body.” Blacks Law Dictionary 1165 (7th ed. 1999). A “petitioner” is defined as “[a] party who presents a petition to a court or other official body, esp. when seeking relief on appeal.” Blacks Law Dictionary 1166 (7th ed. 1999). This definition is consistent with the understanding that a petitioner is one who must proceed with pleadings. In contrast to the petitioner, a “respondent” is the “party against whom an appeal is taken” or a “party against whom a motion or petition is filed.” Blacks Law Dictionary 1313 (7th ed. 1999). An “application,” on the other hand, is defined as “[a] request for an order not requiring advance notice and an opportunity for a hearing before the order is issued.” Black’s Law Dictionary 96 (7th ed. 1999).

The Act clearly states that when initiating 
commitment 
proceedings against a person, the State should file “a petition” setting forth facts to show that the person is sexually dangerous. 725 ILCS 205/3 (West 1998). Thus, the State must set forth facts in the pleadings to show a person’s sexual dangerousness. In addition to having the burden of pleading the facts necessary to commit a person under the Act, the State must further show that the person is sexually dangerous “beyond a reasonable doubt.” 725 ILCS 205/3.01 (West 1998). Clearly, when the State files its “petition,” it must sustain the burden of proof.

However, the term “petition” has no place in the recovery proceeding under section 9 of the Act. Section 9 mandates that a defendant who is committed to the Department of Corrections can file “[a]n 
application
 in writing setting forth facts showing that such sexually dangerous person or criminal sexual psychopathic person has recovered.” (Emphasis added.) 725 ILCS 205/9 (West 1998). Using the term “petition” when speaking of an “application for recovery” is misleading because it implies that the defendant must proceed with the evidence and sustain a burden of proof during the recovery phase.

A review of various cases discussing recovery hearing proceedings under the Act shows that our appellate court has structured a recovery hearing scheme that places the burden of proceeding with the evidence and the burden of proof on the defendant to show that he has recovered. See 
People v. Coan
, 311 Ill. App. 3d 296 (2000);
 Sizemore
, 311 Ill. App. 3d at 920; 
People v. Cash
, 282 Ill. App. 3d 638, 641 (1996); 
Savage
, 277 Ill. App. 3d at 67; 
People v. Finkle
, 214 Ill. App. 3d 290, 296 (1991); 
People v. Cooper
, 199 Ill. App. 3d 985, 987 (1990); 
Hannan
, 184 Ill. App. 3d 937; 
Parrot
, 108 Ill. App. 3d 222; 
People v. Beksel
, 10 Ill. App. 3d 406, 407 (1973); 
People v. Sweeney
, 114 Ill. App. 2d 81, 86 (1969).

Over the years, the burden of proof on the defendant has emerged as one of “preponderance of the evidence.” 
Sizemore
, 311 Ill. App. 3d at 926; 
Cooper
, 199 Ill. App. 3d at 989; 
Hannan
, 184 Ill. App. 3d at 941; 
Beksel
, 10 Ill. App. 3d at 407; 
Sweeney
, 114 Ill. App. 2d at 88. Even this court, in 
dicta
, has alluded to a defendant’s burden of proof during recovery proceedings. 
People v. Cooper
, 132 Ill. 2d 347, 355 (1989) (until a defendant proves to the court he is no longer sexually dangerous, he retains that status); 
People v. Fish
, 36 Ill. 2d 220, 222 (1966) (burden of proof shifts to the defendant in subsequent proceedings); 
People v. Couvion
, 33 Ill. 2d 408, 411 (1965) (the burden of proof shifts to the defendant in subsequent proceedings following commitment).

We note that the Act specifically refers to the defendant as an “applicant” and a “respondent.” Under a plain reading of these terms, the defendant does not have the obligation to move forward with the evidence or to sustain the burden of proof during the recovery proceeding. Nonetheless, panels of the appellate court have extrapolated the language in the Act to place a nonexistent burden on the defendant. The result is the creation of an entire hearing scheme that is incompatible with the notion of due process and the express language of the Act.

Had the defendant been required to sustain the burden of proof during the recovery proceeding, that language would have been incorporated in the Act. If this court can ascertain legislative intent from the plain language of the statute itself, that intent must prevail. 
Barnett v. Zion Park District
, 171 Ill. 2d 378 (1996). We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. 
Barnett
, 171 Ill. 2d at 389. Under a plain language reading of the Act, when the defendant/applicant files an application for recovery, this application triggers the requirement of a recovery hearing. At the recovery hearing, the defendant becomes a respondent and the State is the petitioner. The State, as the petitioner, must show, beyond a reasonable doubt, that the defendant/respondent is still sexually dangerous.

Additionally, section 5 of the Act, the right to counsel and to demand a jury trial, clearly applies both during the commitment proceeding 
and 
during the recovery proceeding. 
Shiro
, 52 Ill. 2d at 282. We find significant that our legislature, in granting the defendant the right to demand a jury trial and the right to be represented by counsel, referred to him as the “respondent,” not the “petitioner.” 725 ILCS 205/5 (West 1998). The reference to defendant as a “respondent” in a proceeding where he is granted the right to demand a jury and appointment of counsel indicates that, as the respondent, the defendant does not have the burden of proceeding with the evidence.

In support of our conclusion, we also look to a similar statute, the Sexually Violent Persons Commitment Act (hereinafter, the Sexually Violent Persons Act). The Sexually Violent Persons Act applies to persons who are within 90 days of (1) discharge for a sentence that was imposed upon a conviction for a sexually violent offense; (2) release from a Department of Corrections juvenile correctional facility following a delinquency adjudication on the basis of a sexually violent offense; or (3) release from a commitment following a finding of not guilty of a sexually violent offense by reason of insanity. 725 ILCS 207/15(b) (West 1998).

We realize that in creating the Sexually Violent Persons Act, the legislature encompassed a more limited group of offenders than those to which the Act applies. A sexually violent person, who is likely to commit acts of sexual violence in the future, creates different societal problems from those created by a sexually dangerous person who has suffered from a mental disorder for more than one year. See 
People v. McVeay
, 302 Ill. App. 3d 960 (1999); 
People v. McDougle
, 303 Ill. App. 3d 509 (1999). Despite the fundamental differences
(footnote: 1) between the two acts, however, we note that the underlying goal and the legislature’s intent in creating these two statutes is the same.

Both statutes are specifically tailored towards achieving their dual objectives to provide for care and treatment of sexually dangerous individuals and to remove such individuals from society. 
People v. McDougle
, 303 Ill. App. 3d 509 (1999). Consistent with these objectives, our legislature has also provided mechanisms that are available to a committed person to obtain discharge once he has recovered and no longer needs treatment or exclusion from society. 725 ILCS 205/9 (West 1998); 725 ILCS 207/65 (West 1998).

During the recovery hearing under the Sexually Violent Persons Act, the State must show by clear and convincing evidence that the defendant is still sexually violent. 725 ILCS 207/65(b)(2) (West 1998). The Sexually Violent Persons Act provides three different procedures that are available to a defendant who is committed where the State must sustain its burden of proof.
(footnote: 2) In this respect, the State’s evidence, which is the barrier to a defendant’s discharge from commitment, is tested before an impartial fact finder.

We find it significant that in crafting the Sexually Violent Persons Act the legislature clearly mandated that the State, not the defendant, must continue to sustain a burden of proof during the recovery proceeding. 725 ILCS 207/65(b)(2) (West 1998). We believe that the legislature intended that a similar mechanism for discharge be available to a defendant proceeding under the Act. Although the language in the Act is not as precise as the Sexually Violent Persons Act, nor does it provide three different methods to obtain discharge, it does, nonetheless, provide a specific mechanism, through the recovery hearing, for a defendant to test the State’s evidence against him.

Our legislature has implemented specific safeguards to protect a defendant’s due process rights. Of paramount importance is the right to be represented by counsel, the right to a jury trial and the right to have the State prove its case beyond a reasonable doubt. 
Pembrock
, 62 Ill. 2d at 321; 
Olmstead
, 32 Ill. 2d at 312. Thus, when a defendant files an application for recovery under the Act, this application triggers an opportunity for a hearing in which the defendant becomes a respondent and is entitled both to a right to demand a jury and appointment of counsel. 725 ILCS 205/5 (West 1998). The burden of proof, as in the Sexually Violent Persons Act, remains on the State, to provide that defendant is still sexually dangerous. 725 ILCS 205/3.01 (West 1998).
(footnote: 3) We now turn to the substantive issue in the present case.

III. A Summary Judgment Motion Is Inappropriate in a Recovery Proceeding

The State maintains that because section 3.01 of the Act refers to the provision of the Civil Practice Law, the summary judgment provision of that section automatically applies to proceedings under the Act. There is no dispute that the proceedings under the Act are civil in nature. The plain language of the statute makes this fact apparent. Nonetheless, this court has long recognized that the application of the Act may result in deprivation of liberty. As such, we have consistently held that a person proceeding under the Act must be accorded the essential protections available to a defendant in a criminal trial, including the right to counsel and the right to a jury trial.
 Olmstead
, 32 Ill. 2d at 312; 
Capoldi
, 37 Ill. 2d at 18. In that respect the Act can be characterized as a hybrid; although civil in nature, it still confers certain rights of a criminal defendant to a person proceeded against under the Act. The extension of these rights to a person filing an application for recovery under section 9 of the Act guides our decision in this case.

If the recovery hearing scheme created by the appellate court, which places the burden of proof on the defendant, was approved, a defendant would gain nothing in terms of an opportunity to regain his freedom. Because, according to Illinois law, the trial court is not required to provide an independent psychiatrist to the defendant under the Act, the defendant would have nothing but his own application to present to the trier of fact. 
People v. McVeay
, 302 Ill. App. 3d 960, 964 (1999). The necessarily limited allegations made in the defendant’s application alone would almost always be insufficient to sustain the burden placed on him to show by a preponderance of the evidence that he has recovered.

Theoretically, a defendant could, on his own or with the help of privately retained expert witnesses, make a sufficient allegation in his petition to meet the present burden. However, a review of nearly half a century of case law interpreting the Act has failed to reveal such a hypothetical case. To require the defendant to prove that he has recovered and to rebut the statutorily required socio-psychiatric report effectively reduces the defendant’s right to a jury trial to an exercise in futility. See 
People v. Coan
, 316 Ill. App. 3d 14, 16-17 (2000) (McLaren, J., specially concurring). A defendant’s right to assistance of counsel and the right to demand a jury trial, that we have previously held is available to him under section 5 of the Act, would be, in almost all cases, rendered of no value. 725 ILCS 205/5 (West 1998); 
Shiro
, 52 Ill. 2d at 282.

In 
Shiro
, we held that if a person who is committed as a sexually dangerous person files an application for release, the court is 
required
 to determine whether he should be released and must grant the defendant’s request for a jury trial. 
Shiro
, 52 Ill. 2d at 282, citing 
Capoldi
, 37 Ill. 2d at 18. However, if the defendant during a recovery proceeding were placed in the situation where he had to proceed with the evidence, he would never be able to sustain his burden of proof by a preponderance of the evidence. It is unlikely that such a defendant would ever survive a motion for a directed verdict at the close of his evidence. Essentially, section 5 of the Act would be rendered completely ineffectual in the recovery proceedings.

The eradication of the protections provided by section 5 of the Act was the appellate court’s concern in this case on direct appeal.  312 Ill. App. 3d 860. As the appellate court accurately noted, granting a summary judgment motion would allow the State to “circumvent the defendant’s right to a jury trial in violation of section 5 of the Act.” 312 Ill. App. 3d at 863. That was precisely the outcome when the trial court granted the State’s motion for summary judgment in this case. Defendant was stripped of his right to demand a jury trial, the right to be represented by counsel, and the right to test the State’s evidence against him.

The requirements of due process, under both the United States and the Illinois Constitutions, required that the drastic impairment of the liberty and reputation of an individual which results from civil commitment under the Act be justified. 
Pembrock
, 62 Ill. 2d at 321. Allowing a system to exist which would make section 5 essentially inoperable during recovery proceedings would deny the defendant of any viable method of regaining his freedom and would violate his due process rights.

As our court stated in 
Olmstead
, a defendant’s route to freedom should not “find a road block in the fact that the indigent defendant is inarticulate in the forms of law or that he does not have the affidavits of psychiatric specialists to support his application.” 
Olmstead
, 32 Ill. 2d at 314. The minimum pleading requirement for a defendant filing an application for recovery under the Act is that he must set forth facts and circumstances showing that he has recovered. 
Olmstead
, 32 Ill. 2d at 314. Under the principles set forth in 
Olmstead
, and its progeny, defendant’s application in this case fulfilled the minimum pleading requirement. Those facts and circumstances did not need to be accompanied by additional psychiatric reports or documents. Therefore, on its face, the application for recovery was sufficient and 
required
 the court to set the matter for a hearing and to impanel a jury.

 Defendant’s only avenue to freedom, a hearing pursuant to an application for recovery where the State must sustain the burden of proof against defendant, would be thwarted through a motion for summary judgment. Applying the principles of a purely civil remedy would force defendant to show that a material fact exists. As we have previously noted, defendant is not entitled to appointment of an independent expert. Therefore, the only expert opinion that would be considered at a hearing on a motion for summary judgment is that contained in the Department’s socio-psychiatric report. Thus, the defendant would be placed in a position where the true decision would not be made by an impartial fact finder but by the expert testimony of the government psychiatrist or reliance on the Department’s expert’s report.

The defendant would have nothing to present to the trier of fact, as he is indigent and without any means to procure evidence necessary to overcome the presumption against him. As a consequence, the State would never have to meet its burden of proof beyond a reasonable doubt to show that the defendant had not recovered and that he should remain confined in the Department of Corrections.

The scheme envisioned by our appellate court would deprive defendant of having a jury of 12 impartial citizens test the credibility of the witnesses and determine the defendant’s future. A defendant would only find success in a situation where the State’s experts agreed that the accused has recovered from the condition that first led to his commitment. This outcome, however, is highly improbable.

Stripping the defendant of the protections of section 5 under the Act would render an absurd result. In essence, a defendant’s avenue to liberty, paved with precious rights to counsel and trial by jury, under the current structure created by various panels of the appellate court, would be equipped with a dead end. To avoid such a contrary result, we conclude that a motion for summary judgment is an inappropriate civil remedy that has no place in applications for recovery filed under the Act.

We realize that the Act imposes a significant burden on this State’s limited judicial resources. The Act is silent and contains no limitation on the number of applications showing recovery that a sexually dangerous person may file. In addition, it also fails to specify the length of time allowed between applications, unlike its similar sister statute.
(footnote: 4) Although we recognize the impact of the Act on the State’s resources, this is a legislative matter that we must leave for the General Assembly to address.

IV. CONCLUSION

For these reasons, we find that upon defendant’s filing of the application for recovery, the trial court should have appointed counsel to represent the indigent defendant, should have impaneled a jury pursuant to the defendant’s jury demand and should have held a hearing, structured as we have indicated, to determine if the defendant had recovered from the disability responsible for his confinement. In this respect, the State’s evidence, which is the barrier to a defendant’s freedom, is tested at a jury trial in which the State’s witnesses have been cross-examined by counsel for the defendant; their credibility has been tested; and a decision is made by 12 impartial citizens whether the applicant should continue to remain in the custody of the State.

The judgment of the appellate court is affirmed.

Affirmed.

FOOTNOTES
1:   
1
We recognize that the procedures under the Sexually Dangerous Persons Act are different from the involuntary commitment proceedings for individuals committed under the provisions of the Sexually Violent Persons Act, namely, the Act provides an alternative to criminal prosecution while commitment under the Sexually Violent Persons Act is pursued in addition to criminal proceedings. 725 ILCS 207/15(b) (West 1998); 725 ILCS 205/4 (West 1998).

2:     
2
The Sexually Violent Persons Act provides three different procedures available to a defendant who is committed under the Act of obtaining discharge. The first involves a hearing where the State has the right to have the defendant examined by an expert and has the burden of proving by clear and convincing evidence that the defendant is still sexually violent. 725 ILCS 207/65(a)(2) (West 1998). The second mechanism for discharge is triggered whenever the defendant undergoes one of the periodic examinations required by statute. The State must show by clear and convincing evidence that the defendant is still sexually violent. 725 ILCS 207/65(b)(2) (West 1998). Finally, a defendant can petition for discharge at times other than the periodic examinations, subject to certain limitations outlined in the act. 725 ILCS 207/70 (West 1998).

3:     
3
Under both statutes the burden of proof during a recovery hearing remains on the State. However, unlike the Sexually Violent Persons Act, where the legislature has created a standard of proof by clear and convincing evidence (725 ILCS 207/65(b)(2) (West 1998)) the standard of proof in the Act remains beyond a reasonable doubt (725 ILCS 205/3.01 (West 1998)).

4:     
4
Under the Sexually Violent Persons Act (725 ILCS 207/1 
et seq
. (West 1998)), after a defendant has been committed to institutional care, the Department of Human Services is to conduct an examination of his mental condition within 6 months of the initial commitment and again thereafter at least once every 12 months.