2023 IL App (1st) 211084

No. 1-21-1084

Opinion filed March 31, 2023

Sixth Division

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| *In re* COMMITMENT OF GREGORY CONLEY | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | No. 15 CR 80006 |
| | ) | |
| v. | ) | Honorable |
| | ) | Michael Clancy, |
| Gregory Conley, | ) | Judge, presiding. |
| | ) | |
| Respondent-Appellant). | ) | |

---

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1     In September 2015, the State filed a petition to civilly commit Respondent Gregory Conley to institutional care under the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 1998)). Following a bench trial, the circuit court found Conley was a sexually violent person and granted the State's petition. On appeal, Conley argues (1) the petition violated his constitutional right to a speedy trial, (2) the prosecution of the petition violated his right to be free from double jeopardy, (3) the petition was barred by statute of limitations and *res judicata*, and (4)

the evidence was insufficient to prove beyond a reasonable doubt that he was a sexually violent person. For the following reasons, we affirm.

¶ 2                                        I. BACKGROUND

¶ 3      On May 5, 1999, the State filed a petition to civilly commit Conley to institutional care under the Sexually Violent Persons (SVP) Commitment Act (SVP Act) (725 ILCS 207/1 *et seq.* (West 1998)) after he served his prison term on a 1993 conviction for attempted aggravated criminal sexual assault. In April 2000, a jury rendered a verdict that Conley was a sexually violent person. Conley filed a motion for a new trial, and the circuit court granted the motion. In October 2000, Conley escaped from the custody of the Department of Human Services while being transported to court. As a result, Conley was convicted of escape, two counts of possessing contraband in a penal institution, and two counts of aggravated battery. In July 2001, Conley was sentenced to 30 years in prison. On August 16, 2001, the State voluntarily dismissed Conley's 1999 SVP case.

¶ 4      Conley served his sentence on the escape conviction between 2001 and 2015. On September 30, 2015, the State filed a petition to civilly commit Conley under the SVP Act. Conley filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)). In the motion, Conley argued (1) the petition was barred by *res judicata* and statute of limitations; (2) the petition violated the double jeopardy clause; (3) the prosecution of the case violated his constitutional right to a speedy trial; and (4) the Act was unconstitutional as applied to him. The court denied the motion to dismiss on July 22, 2016.

¶ 5      On May 3, 2021, the case proceeded to a bench trial. The State submitted a certified statement of Conley's 1993 conviction for attempted aggravated criminal sexual assault. The State

also introduced the testimony of Dr. John Arroyo and Dr. Steven Gaskell, clinical psychologist experts in sex offender evaluation, diagnosis, and risk assessment. Both Arroyo and Gaskell performed an evaluation of Conley in 2015. The doctors later attempted to interview Conley, but Conley refused. In 2020, the doctors updated their evaluations by reviewing Conley's criminal history records, medical records, and treatment records.

¶ 6 Conley's records revealed he joined a gang and began selling drugs and robbing stores at 12 years old. He started making obscene phone calls at the age of 13 and had his first deviant sexual thought about raping someone at the age of 15. Conley was arrested for burglary at 15 years old and convicted of burglary at 17 years old. He also reported participating in "gang rapes of girls in the neighborhood."

¶ 7 Conley was convicted of several offenses of rape, deviant sexual assault, and robbery committed in 1979 and 1980 and was sentenced to a concurrent 14 years in prison for each offense. In 1988, he was convicted of attempted aggravated kidnapping and was sentenced to 5 years in prison. In 1991, Conley was convicted of attempted aggravated criminal sexual assault and sentenced to 17 years in prison. In 2000, he was convicted of escape, possessing contraband in a penal institution, and aggravated battery and sentenced to 30 years in prison. During his incarceration, Conley averaged fourteen disciplinary tickets a year between 1980 and 1990. Between 2001 and 2011, Conley received 15 tickets. Since his second commitment, Conley has had "maybe four warnings" from the institution.

¶ 8 Dr. Arroyo diagnosed Conley with antisocial personality disorder and other specified paraphilic disorder that cause him to be sexually attracted to nonconsenting partners. Dr. Arroyo explained this type of paraphilia as "any persistent and intense sexual interest, other than sexual

interest in genital stimulation or preparatory fondling with phenotypically normal, physically mature consenting human partners." Dr. Arroyo stated that this paraphilia becomes a disorder "when it is causing the individual distress or impairment, or satisfying that paraphilia causes harm or risk of harm to others." Dr. Arroyo described Conley's pattern of behavior as Conley "walking the streets, that he would look for victims that were vulnerable. He would then follow them until they were in a quiet area or quickly move them to a quiet area. He would then sometimes threaten them; punch them; tell them he had a gun or knife. He would vaginally penetrate them, and then he would leave." Conley also underwent a penile plethysmograph examination which showed "clinically significant arousal to opportunistic non-consent themes and muted sadism." Dr. Arroyo admitted that the DSM-5 does not identify other specified paraphilic disorder. Dr. Arroyo opined Conley's diagnoses were congenital or acquired conditions that affect the emotional or volitional capacity and predispose Conley to commit acts of sexual violence.

¶ 9     Dr. Arroyo conducted a risk assessment using the Static-99R and Static-2002R actuarial instruments. Conley scored a 5, an above average risk category, on both assessments. Based on the Static-99R score, Conley had between 21% and 32% likelihood of recidivism within five years. Using the Static-2002R score, Conley was 1.9 times more likely to be rearrested or reconvicted when compared to the typical sex offender who scored a 3. Dr. Arroyo also considered factors not analyzed in the risk assessments such as (1) capacity for relationship stability, (2) hostility toward women, (3) lack of concern for others, (4) impulsiveness, (5) poor problem solving, (6) sex as coping, (7) deviate sexual preference, and (8) cooperation with supervision. Dr. Arroyo stated that he did not see any evidence that Conley currently acted out toward women, that Conley has received treatment for sexual coping, and that Conley had difficulty with supervision in the past.

Dr. Arroyo acknowledged Conley had participated in a six-month sex offender treatment program in 1998 and was currently in phase 3 of his treatment program but did not believe Conley's treatment was a protective factor. Dr. Arroyo opined that Conley was a sexually violent person.

¶ 10    Dr. Gaskell diagnosed Conley with other specified paraphilic disorder, sexually attracted to nonconsenting females, nonexclusive type because "he had a pattern of using physical force and threats of a weapon to either coerce or attempt to coerce adolescent and adult females into engaging in sexual behavior with him." Like Dr. Arroyo, Dr. Gaskell referenced the 2018 penile plethysmograph test as well as a subsequent test conducted in 2000. Dr. Gaskell explained the 2000 test showed arousal to coercion and violence toward women and the 2018 test was "very similar." In 2018, Dr. Gaskell reported that Conley was "having fantasies that involved, objectifying and demeaning females, and having dominance over them" and Conley's "most arousing sexual fantasy that he never acted upon was raping three women."

¶ 11    Dr. Gaskell also diagnosed Conley with other specified personality disorders because "he meets the full criteria for antisocial personality disorder," including "[r]eckless disregard for the safety of others; irritability and aggressiveness by repeated physical assaults; impulsivity; and lack of remorse." Dr. Gaskell explained Conley had a "history of committing serious criminal offenses." Conley also had a history of committing "other nonsexual offenses" and "rule violations that he's had in prison." For instance, in 2015, Conley threatened to stab a female security staff and, in 2017, he was in a fight.

¶ 12    Dr. Gaskell stated that the presence of both other specified paraphilic disorder and other specified personality disorder was significant because it "shows that he has sexual deviance, and the other one makes it more likely that he's going to act on that sexual deviance." Dr. Gaskell

noted Conley has had "fantasies about objectifying and demeaning women and being dominant over them" and, in 2018, Conley stated "his most arousing fantasy [was] that he has not completed raping three women." Dr. Gaskell believed Conley's disorders were "chronic" and "lifelong" that can be "managed with treatment." Dr. Gaskell performed a Static-99R and a Static-2002R risk assessments. Conley scored a 6 on the Static-99R and a 5 on the Static-2002R. Dr. Gaskell found, based on the risk assessment scores, Conley was respectively 3.77 and 1.97 times more likely to reoffend than the average sex offender. Conley's Static-2002R score indicated that he had a 19.1% likelihood of recidivism within 5 years. Dr. Gaskell also considered factors such as "early onset of sexual offending; any deviant sexual interest; deviant arousal on the PPG; anti-personality [*sic*] disorder; hostility; impulsiveness/recklessness; separation from parents; neglect; [and] physical emotional abuse." Dr. Gaskell also found evidence of noncompliance with supervision and negative maternal relationships. Dr. Gaskell explained Conley scored high on the Hare Psychopathy Checklist suggesting that his antisocial personality disorder was "quite severe." Dr. Gaskell acknowledged Conley's treatment progress but did not consider it to be a protective factor. Dr. Gaskell admitted that sexual attraction to nonconsenting females does not appear in the DSM-5 and that Conley had not committed an act of sexual violence since 1999.

¶ 13    The court found that Conley was a sexual violent person and ordered Conley be committed to institutional care. Conley filed a motion for a new trial, which the court denied. This appeal follows.

¶ 14                              II. JURISDICTION

¶ 15    On September 30, 2015, the State filed a petition for sexually violent person commitment. On July 22, 2021, the circuit court entered a judgment finding Conley is a sexually violent person

and committed him to institutional care. Conley filed a notice of appeal on July 28, 2021. We have jurisdiction over this appeal pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 303 (eff. July 1, 2017).

¶ 16                                III. ANALYSIS

¶ 17     On appeal, Conley argues: (1) the petition violated his constitutional right to a speedy trial; (2) the prosecution of the petition violated his right to be free from double jeopardy; (3) the petition was barred by statute of limitations and *res judicata*; and (4) the evidence was insufficient to prove beyond a reasonable doubt that he was a sexually violent person.

¶ 18                                A. Speedy Trial

¶ 19     Conley claims the delay, between the State's voluntary dismissal of the first SVP petition in 2001 and the May 3, 2021 trial on the second SVP petition, violated his constitutional right to a speedy trial. The State asserts Conley's speedy trial right argument fails under the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972).

¶ 20     On review of the adjudication of a sexually dangerous person (SDP), our supreme court held, even though the proceedings are civil in nature, "they may result in deprivation of liberty and incarceration in the penitentiary for psychiatric treatment." *People v. Trainor*, 196 Ill. 2d 318, 328 (2001). Accordingly, a respondent "must be accorded the essential protections available to a criminal trial." *Id.* These protections include the right to a speedy trial under the due process clause of the sixth amendment. *Id.* at 329. Similarly, the deprivation of liberty and incarceration also arises for respondents, like Conley adjudicated under the SVP Act. We find the same rationale that the speedy trial right extends to SDP commitment proceedings equally applies to cases arising under the SVP Act.

¶ 21    The right to a speedy trial is guaranteed by the United States Constitution and the Illinois Constitution. U.S. Const. amends. VI, XIV; Ill. Const. 1970, art. I, § 8. When analyzing whether a respondent's constitutional speedy trial right was violated, Illinois courts considers four factors set forth in *Barker*: (1) length of the delay; (2) reasons for the delay; (3) prejudice, if any, to the defendant; and (4) defendant's assertion of his right. *People v. Crane*, 195 Ill. 2d 42, 48 (2001). "[T]he speedy trial factors are interrelated, and we will not find a violation based on the presence or absence of any single factor." *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 76 (citing *Crane*, 195 Ill. 2d at 60). When reviewing Conley's speedy trial argument, the relevant period is September 30, 2015, when the State filed the second petition, and May 3, 2021, the date of trial. See *United States v. Marion*, 404 U.S. 307, 313 (1971) ("the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'"); *People v. Lawson*, 67 Ill. 2d 449, 458 (1977) ("delay before an indictment or arrest does not raise any issue of speedy trial under the sixth amendment"). Where the relevant facts are uncontested, the ultimate determination of whether a defendant's constitutional right to a speedy trial was violated is reviewed *de novo*. *People v. Crane*, 195 Ill. 2d 42, 52 (2001).

¶ 22    As it pertains to the first factor, this court held "[a] speedy trial inquiry will not be triggered unless the complained-of delay crosses the threshold from ordinary to "presumptively prejudicial," which has generally been found to be a delay approaching one year." *Holmes*, 2016 IL App (1st) 132357, ¶ 67. However, "a presumptively prejudicial delay does not mean that the delay will be found to have actually prejudiced the defendant. [Citation.] Instead, it marks the point at which we analyze the delay under the remaining three factors." *Id.* Here, the trial did not commence until 5

years and 7 months after the State filed the 2015 petition. Such delay is presumptively prejudicial. See *Id.* ¶ 67.

¶ 23   As it pertains to the second factor, the record shows, from September 30, 2015, to November 13, 2017, the case was continued by agreement several times. According to the case docket, on November 13, 2017, the case was continued by agreement to December 18, 2017. From December 18, 2017, to May 13, 2019, the case was continued by agreement several times. On May 13, 2019, the case was continued to May 16, 2019, because defense counsel was not present in court. Between May 16, 2019, and April 23, 2020, the case was continued by agreement several times. The case was continued on April 23, 2020, to July 13, 2020, as a result of the COVID-19 pandemic. Between July 13, 2020, and May 3, 2021, the case was continued by agreement several times. The record shows, between the filing of the 2015 petition and the trial, the case was mostly continued either by agreement or for reasons attributable to the defense.

¶ 24   As it pertains to the third factor, prejudice "is assessed in light of the interests of defendants that the speedy trial right was designed to protect—preventing oppressive pretrial incarceration, minimizing the defendant's anxiety and concern about the pending charge, and limiting the possibility that the defense will be impaired by the delay." *Holmes*, 2016 IL App (1st) 132357, ¶ 75 (citing *Crane*, 195 Ill. 2d at 59). In this case, the delay resulted from several continuances entered by agreement or attributed to the defense. Conley also filed two motions during the delay period that further contributed to the delay. Based on Conley's significant acquiescence and contribution to the delay, any prejudice resulting from the delay is minimal.

¶ 25   As it pertains to the fourth factor, the record shows, throughout the delay period, Conley only asserted his right once when his counsel answered ready for trial on April 1, 2021, 33 days

before the trial date. In light of the *Barker* factors, we find no violation of Conley's constitutional right to a speedy trial.

¶ 26                                    B. Double Jeopardy

¶ 27    Conley contends the State's prosecution of the 1999 petition and subsequent 2015 petition placed him in jeopardy twice for the same offense in violation of the double jeopardy clause. U.S. Const. amend. V; Ill. Const. 1970, art. I, § 10. The State argues the double jeopardy clause does not apply to SVP commitment proceedings. The State also claims, even if the double jeopardy clause applied, there is no violation where jeopardy never terminated at the trial on the 1999 petition because the trial court granted Conley's motion for a new trial.

¶ 28    The fifth amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. The Illinois Constitution also provides that "[n]o person shall be *** twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, § 10. The double jeopardy clause prohibits: (1) a second prosecution for the same offense following an acquittal; (2) a second prosecution for the same offense following a conviction; and (3) multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Where neither the facts nor the credibility of witnesses is contested, the issue of double jeopardy presents a question of law, and the standard of review is *de novo*. *People v. Weinke*, 2021 IL App (1st) 180270, ¶ 20.

¶ 29    Our supreme court determined the SVP Act does not violate the double jeopardy clause. *In re Detention of Samuelson*, 189 Ill. 2d 548 (2000). Adopting the rationale in *Kansas v. Hendricks*, 521 U.S. 346 (1997), the court explained involuntary confinement does not constitute a second prosecution under the double jeopardy clause because SVP proceedings are civil rather than

criminal in nature. *Id.* at 558-59. The court also reasoned the SVP Act has no retroactive effect because a respondent cannot be involuntarily committed based on past conduct. *Id.* at 559. Given the supreme court's decision, we find the State's subsequent prosecution on the 2015 SVP petition did not violate the double jeopardy clause.

¶ 30    Conley argues *Samuelson* is factually distinguishable from this case because the respondent in *Samuelson* alleged that double jeopardy prohibited SVP commitment proceedings after discharge from IDOC custody on a criminal offense. We find, nonetheless, the same logic applies to this case where the State sought SVP commitment proceedings twice.

¶ 31    Conley also asserts the General Assembly provided to SVP respondents all constitutional rights that were available to defendants in criminal proceedings. See 725 ILCS 207/35(b) (West 2000). However, this provision was removed from the statute on August 16, 2001, and is inapplicable to the 2015 petition. Pub. Act 92-415, § 15 (eff. Aug. 17, 2001) (amending 725 ILCS 207/35(b)).

¶ 32                              C. Statute of Limitations

¶ 33    Conley argues the petition was not filed within one year of the voluntary dismissal of the 1999 petition pursuant to section 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 2014)), and thus, barred by statute of limitations. The State argues section 15 of the SVP Act (725 ILCS 207/15 (West 2014)) governs the filing of commitment petitions and the 2015 petition was timely pursuant to section 15. "The application of statutes of limitations is a question of law that is evaluated according to a *de novo* standard of review." *First Baptist Church of Lombard v. Toll Highway Authority*, 301 Ill. App. 3d 533, 540 (1998).

¶ 34 Section 1-108(b) of the Code of Civil Procedure provides, "In proceedings in which the procedure is regulated by statutes other than those contained in this Act, such other statutes control to the extent to which they regulate procedure." 735 ILCS 5/1-108(b) (West 2014).

¶ 35 The provisions of the SVP Act are triggered when a respondent who has been convicted of a sexually violent offense is nearing release or discharge from custody. *In re Commitment of Samuelson*, 189 Ill. 2d 548, 553 (2000). "The petition must be filed no more than 90 days before discharge or entry into mandatory supervised release from a Department of Corrections *** for a sentence that was imposed upon a conviction for a sexually violent offense." 725 ILCS 207/15(b-5) (West 2014). "A person convicted of a sexually violent offense remains eligible for commitment as a sexually violent person pursuant to this Act under the following circumstances: *** (2) the person returns to custody of the Illinois Department of Corrections *** for any reason during the term of parole, aftercare release, or mandatory supervised release being served for a sexually violent offense." 725 ILCS 207/15(b-7) (West 2014).

¶ 36 Here, the State filed its SVP petition in May 1999 shortly before Conley's release from prison on his convictions of aggravated kidnapping, attempted aggravated criminal sexual assault, and robbery. While serving his three-year mandatory supervised release term in 2000, Conley was convicted of escape, possessing contraband in a penal institution, and aggravated battery and sentenced to 30 years in prison. Shortly before Conley's release from prison on the 2000 convictions, the State filed another SVP petition in 2015.

¶ 37 When Conley returned to IDOC custody on the 2000 convictions, he remained eligible for commitment as a sexually violent person pursuant to section 1-108(b-7) of the Act. Consequently, the time to file a commitment petition did not expire until Conley was discharge from IDOC

custody. Thus, the 2015 petition filed shortly before his release from prison on the 2000 convictions was timely under section 15 of the SVP Act.

¶ 38                                    D. *Res Judicata*

¶ 39    Conley argues that the 2015 petition is barred under the doctrine of *res judicata*. The State contends that the 2015 petition is not barred by *res judicata* because no final judgment was entered on the 1999 petition, and the 1999 and 2015 petitions do not contain the same operative facts.

¶ 40    "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 468 (2008). "Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Id.* "Whether a claim is barred under the doctrine of *res judicata* presents a question of law, which is reviewed *de novo*." *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 22.

¶ 41    As it pertains to the first element, to be final, a judgment or order must terminate the litigation and fix absolutely the parties rights, leaving only enforcement of the judgment. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24. An order granting a party leave to voluntarily dismiss an action does not become final until the expiration of the time to refile that action. *Gassman v. Clerk of the Circuit Court of Cook County*, 2019 IL App (1st) 171543, ¶ 20.

¶ 42    The State voluntarily dismissed the 1999 petition in August 2001. As previously stated, pursuant to section 15(b-7) of the SVP Act, the time to refile a subsequent petition had not expired

because Conley returned to the custody of IDOC for his 2000 convictions while he was serving his three-year MSR term on a sexually violent offense. Section 15(b-7) of the SVP Act provides:

"[a] person convicted of a sexually violent offense remains eligible for commitment as a sexually violent person pursuant to this Act under the following circumstances: (1) the person is in custody for a sentence that is being served concurrently or consecutively with a sexually violent offense; (2) the person returns to the custody of the Illinois Department of Corrections or the Department of Juvenile Justice for any reason during the term of parole, aftercare release, or mandatory supervised release being served for a sexually violent offense; or (3) the person is convicted or adjudicated delinquent for any offense committed during the term of parole, aftercare release, or mandatory supervised release being served for a sexually violent offense, regardless of whether that conviction or adjudication was for a sexually violent offense."

¶ 43    Here, Conley returned to the custody of the IDOC during the term of his MSR being served for a sexually violent offense, and he was convicted of an offense committed during the term of MSR being served for a sexually violent offense. Therefore, Conley remained eligible for commitment as a sexually violent person pursuant to the Act, and the 2015 petition was not barred by *res judicata*.

¶ 44                                E. Reasonable Doubt

¶ 45    Conley claims the State failed to prove beyond a reasonable doubt that Conley is a sexually violent person under the SVP Act. The State argues Conley's conviction for attempted aggravated criminal sexual assault and the expert testimonies were sufficient to prove beyond a reasonable doubt that Conley is a sexually violent person.

¶ 46    To establish that a respondent is an SVP, the State must prove beyond a reasonable doubt that the respondent: (1) was convicted of a sexually violent offense; (2) has a mental disorder; and (3) the mental disorder makes it substantially probable that he will engage in acts of sexual violence. *In re commitment of Fields*, 2014 IL 115542, ¶ 20. When reviewing claims challenging the sufficiency of the evidence, we consider whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could find the elements proved beyond a reasonable doubt. *Id.*

¶ 47    At the SVP commitment trial, the State submitted Conley's conviction for attempted aggravated criminal sexual assault. The State also introduced the testimony of Dr. Arroyo and Dr. Gaskell, two expert witnesses in sex offender evaluation, diagnosis, and risk assessment. Both witnesses conducted evaluations on Conley in 2015 and reviewed his medical and criminal history. Dr. Arroyo diagnosed Conley with antisocial personality disorder and other specified paraphilic disorder that made him sexually attracted to nonconsenting partners. Dr. Arroyo conducted a risk assessment using the Static-99R and Static-2002R actuarial instruments. Conley scored a 5, an above average risk category, on both assessments. Based on the Static-99R score, Conley had between 21% and 32% likelihood of recidivism within five years. Based on the Static-2002R score, Conley was 1.9 times more likely to be rearrested or reconvicted when compared to the typical sex offender who scored a 3. Dr. Arroyo opined Conley's diagnoses were congenital or acquired conditions that affect the emotional or volitional capacity and predispose Conley to commit acts of sexual violence.

¶ 48    Dr. Gaskell diagnosed Conley with other specified paraphilic disorder, sexually attracted to nonconsenting females, nonexclusive type. Dr. Gaskell testified that the presence of both other

specified paraphilic disorder and other specified personality disorder was significant because it "shows that he has sexual deviance, and the other one makes it more likely that he's going to act on that sexual deviance." Dr. Gaskell also performed a Static-99R and a Static-2002R risk assessments. Conley scored a 6 on the Static-99R and a 5 on the Static-2002R. Dr. Gaskell found, based on the risk assessment scores, Conley was respectively 3.77 and 1.97 times more likely to reoffend than the average sex offender. Conley's Static-2002R score indicated that he had a 19.1% likelihood of recidivism. Dr. Gaskell opined Conley's disorders were "chronic" and "lifelong" that can be "managed with treatment." Viewing the evidence in light most favorable to the State, we hold any rational trier of fact could find beyond a reasonable doubt that Conley is a sexually violent person under the SVP Act.

¶ 49                                    IV. CONCLUSION

¶ 50      We find the 2015 commitment petition was timely filed and not barred by *res judicata*. We also find Conley was not subject to double jeopardy or deprived of his right to a speedy trial. Last, we hold any rational trier of fact could find beyond a reasonable doubt that Conley is a sexually violent person under the SVP Act. We affirm the judgment of the circuit court.

¶ 51      Affirmed.

---

*In re Commitment of Gregory Conley*, **2023 IL App (1st) 211084**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CR-80006; the Hon. Alfredo Maldonado and Michael Clancy, Judges presiding. |
| **Attorneys for Appellant:** | Michael R. Johnson, Kate E. Levine, of Johnson & Levine LLC., for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Jane E. Notz, Katherine M. Doersch, Joshua M. Schneider of Manassa Law, of State of Illinois, for appellee. |