10 March 2000

NO. 4-98-0775

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

) Woodford County

DANIEL K. SIZEMORE, ) No. 84CF48

Defendant-Appellant. )

) Honorable

) Donald D. Bernardi,

) Judge Presiding.

________________________________________________________________

PRESIDING JUSTICE COOK delivered the opinion of the

court:

In March 1985, the trial court committed defendant Daniel K. Sizemore to the Department of Corrections (DOC) as a sexually dangerous person.  On October 9, 1997, Sizemore filed a petition for recovery and/or conditional discharge in the circuit court of Woodford County.  After completing an evidentiary hearing on August 21, 1998, the circuit court denied the peti

tion.  Sizemore appeals, arguing that he met his burden of proof, establishing his right to conditional discharge.  He contends that the circuit court's decision was against the manifest weight of the evidence.  We disagree and affirm the circuit court's ruling.

I. JURISDICTION

We must first address the State's assertion that we lack jurisdiction to review the circuit court's decision because Sizemore filed an untimely appeal.  Sizemore's 
pro
 
se
 notice of appeal was mailed on September 24, 1998, and file stamped by the clerk's office on September 28, 1998.  

Section 3.01 of the Sexually Dangerous Persons Act provides that proceedings under the Act are civil in nature and that "[t]he provisions of the Civil Practice Law, and all exist

ing and future amendments of that Law and modifications thereof and the Supreme Court Rules now or hereafter adopted in relation to that Law shall apply to all proceedings hereunder except as otherwise provided in this Act."  725 ILCS 205/3.01 (West 1998).

Supreme Court Rule 303, controlling civil appeals, provides that a notice of appeal must be filed within 30 days from the date judgment is entered.  155 Ill. 2d R. 303(a)(1).  In Illinois, notices of appeal mailed within the 30-day period and received and file stamped thereafter are considered timely filed.  See 
Harrisburg-Raleigh Airport Authority v. Department of Reve

nue
, 126 Ill. 2d 326, 340, 533 N.E.2d 1072, 1078 (1989).  Here, Sizemore mailed the notice of appeal on September 24, 1998, 34 days after the circuit court judgment was entered.  Technically, the notice of appeal was untimely.  However, Rule 303(d) permits the appellate court to review untimely appeals where the appel

lant files a motion demonstrating a reasonable excuse for the untimely filing within 60 days after entry of the judgment.  155 Ill. 2d R. 303(d).

In his reply brief, Sizemore notes that his untimely filing was due to the fact that he was waiting for a written order from the circuit court denying his petition before he filed his 
pro
 
se
 appeal.  When the written order did not arrive, he filed the notice of appeal anyway.  

We recognize that the circuit court was not required to enter a written order denying Sizemore's petition.  The docket order entered by the clerk after the circuit court's oral ruling was sufficient to trigger to 30-day period for filing an appeal.  However, in the interests of justice and under these circum

stances, we will consider Sizemore's notice of appeal as a motion for leave to proceed with an untimely appeal to this court.  We grant Sizemore leave to proceed with his appeal.  As such, we will address the merits of his claims.   

II. DEMONSTRATING RECOVERY AND APPLYING FOR DISCHARGE 

UNDER THE SEXUALLY DANGEROUS PERSONS ACT

Pursuant to the Sexually Dangerous Person Act (Act) (725 ILCS 205/9 (West 1998)), a person adjudicated to be sexually dangerous can file an application with the court setting forth the facts that show that he has recovered.  The applicant is entitled to a hearing to determine whether he has recovered and should be released.  Sizemore's 
pro
 
se
 application for discharge alleged that he had made "significant progress" through group therapy and was able to control his sexually inappropriate behavior.  Sizemore claimed that he had recovered to a point where he could function in a less "restrictive environment as part of his reintegration with society."  

After the petition is filed, the Director of DOC must coordinate preparation of a sociopsychiatric report concerning the applicant.  725 ILCS 205/9 (West 1998).  The report must be "prepared by the psychiatrist, sociologist, psychologist, and warden of, or assigned to, the institution wherein such applicant is confined."  725 ILCS 205/9 (West 1998).  Sizemore's socio-

psychiatric report, dated December 9, 1997, and updated on August 18, 1998, complies with the Act.  The report concluded that Sizemore was sexually dangerous, with a high risk to reoffend.  

The circuit court then conducts a hearing, considering testimony, the report, and any other relevant information submit

ted by the applicant.  Absent a jury demand, the court determines whether the applicant remains sexually dangerous.  The applicant must be discharged if the court determines that he is no longer dangerous.  An applicant can be conditionally discharged if the court finds the applicant "appears no longer to be dangerous but that it is impossible to determine with certainty under condi

tions of institutional care that such person has fully recov

ered."  725 ILCS 205/9 (West 1998).  Under a conditional dis

charge, the applicant is permitted to "go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public."  725 ILCS 205/9 (West 1998).  Neither expert in Sizemore's case advocated full discharge.  Sizemore's expert suggested that he be conditionally released, with regular supervision.  The State's expert requested that Sizemore be remanded to DOC for further treatment.

III. EVIDENTIARY HEARING ON SIZEMORE'S APPLICATION FOR DISCHARGE

The evidentiary hearing was originally scheduled for July 10, 1998.  The matter was continued because DOC failed to abide by a writ that ordered that Sizemore be transported to court on that day.  The hearing was continued for a status hearing a week later, where Sizemore waived his right to have a jury decide his case.  The trial court conducted an evidentiary hearing on August 21, 1998.  Robert Chapman, M.D., S.C., a court- appointed forensic psychiatrist, testified for Sizemore, while Mark S. Carich, Ph.D., testified for the State.  Sizemore also testified on his own behalf.          

A. Dr. Robert Chapman

Dr. Chapman met with Sizemore on April 15, 1998.  Prior to meeting with Sizemore, Dr. Chapman had reviewed a 1995 foren

sic psychiatric evaluation, Dr. Carich's 1995 mental health evaluation, and the court order adjudicating Sizemore a sexually dangerous person.  

During the  two-hour examination, Dr. Chapman adminis

tered the Minnesota Multiphasic Personality Inventory test (MMPI) to Sizemore, but the test was invalid because Sizemore did not finish the test and randomly answered questions.  Dr. Chapman believed that Sizemore's poor reading abilities and attention deficit disorder made it difficult for him to complete the test.    Sizemore told Dr. Chapman that upon entering DOC in 1985, the sexual offender treatment program at Menard consisted of weekly two-hour group meetings of 20 to 30 inmates who were supervised by a specialist.  In 1987, the program increased to 2-

hour group sessions 3 to 4 times a week with only 15 inmates in a group with 2 supervising specialists, 1 of whom was Dr. Carich.  Sizemore quit the treatment program in 1987 after he was moved to the segregation unit for six months.  He chose not to participate in the sexual offender treatment program from 1987 to 1994.  

In 1994, he reentered the program in Menard, and in 1995 was transferred to Big Muddy River Correctional Center, which offered 2- to 3-hour therapy sessions 3 times a week with 2 supervisors and about 25 inmates.  Sizemore claimed that since 1994, he made significant progress by developing empathy for his victims, whose ages ranged from 9 to 13, by recognizing his own victimization as a child, expressing his feelings, and identify

ing his cycle of offending.  

Dr. Chapman stated that Sizemore did not take advantage of or benefit from treatment that was offered to him prior to 1994, but after 1994, had sincerely engaged in therapy and had benefitted from it.  When Dr. Chapman compared the previous examinations and reports concerning Sizemore to his current impressions, he concluded that Sizemore had made improvement in the following areas:

"(1) He no longer denied his criminal

offenses or paraphilia, which was one of the

biggest hurdles for a sexually dangerous per-

son to overcome;

(2) He had made progress in developing 

empathy for his victims and for himself as 

a former victim; and

(3) He appreciated that he was at risk

for reoffending and was able to express the

preventative measures needed to keep from 

reoffending."  

Dr. Chapman stated that he could not determine if Sizemore was a fully recovered sex offender.  He did not believe anyone could make that determination as long as Sizemore remained in DOC.  In fact, Dr. Chapman asserted that no offender would be able to make a full recovery when incarcerated in DOC.  

In Dr. Chapman's opinion, Sizemore had sufficiently recovered to be conditionally released to a facility that could provide a high level of scrutiny over his activities for a period of years to protect the public.  Dr. Chapman stated that Sizemore should be assigned to a facility that has court oversight to assure that he continued to receive treatment, obtained employ

ment, and engaged in a lifestyle that was consistent with a low risk for reoffending.  Dr. Chapman suggested that Sizemore's case manager should initially be required to submit a report to the court every three months, and after a year, submit reports to the court every four or five months and gradually give Sizemore more latitude in his range of activities.  Dr. Chapman was not aware of any program meeting those requirements but suggested that the treatment personnel at DOC act as a resource to locate such a facility. 

B. Daniel Sizemore

Sizemore, age 30, testified that offender treatment programs were offered to him since he was incarcerated at age 17, but that he had only benefitted from treatment beginning in 1994.  At that time, Sizemore started "piecing his life back together" and began making strides toward being released from prison.  

Sizemore attended group therapy in a victim-empathy group, an "RET group," which was designed to help the offender break through the pattern of denial and learn to identify his cycle of offending; the discovery group, to discover events from the past as they factored into the cycle of offending; and a social skills group.  When asked about the risk of reoffense, Sizemore stated that he would have to minimize the risk by refraining from high-risk situations, which he identified as being in a public place where few strangers were present and he could stalk a female or a child.  

Sizemore noted that a conditional release program like Dr. Chapman described was available at St. Leonard's, a halfway house in Chicago, which was staffed with counselors who were available to residents every day.  Sizemore learned of the facility from two of his friends from the sexually dangerous persons' unit who had been released to St. Leonard's.  Sizemore stated that he had written to St. Leonard's for an application for admission.  He initially stated that he could reside at St. Leonard's for as long as necessary, but then admitted that the maximum period of residency was one year if the resident was unemployed.  Sizemore said he could not work because he was "legally blind."

C. Dr. Mark Carich  

Dr. Carich testified for the State.  He has a Ph.D. in counseling and 13 years' experience in counseling incarcerated sexual offenders.  He coordinates the sexually dangerous persons' program at Big Muddy River Correctional Center and provides individual and group therapy sessions for sexual offenders.  Dr. Carich has been one of Sizemore's therapists since October 1989.    After receiving Sizemore's petition, Dr. Carich pre

pared a sociopsychiatric report on December 9, 1997, indicating that Sizemore was still considered to be sexually dangerous.  Prior to the evidentiary hearing, Dr. Carich prepared an updated report on August 18, 1998.  

The initial report included Sizemore's statement that he had victimized 10 children, 6 of whom were female and 4 of whom were male.  Following his admission to Menard Psychiatric Center, Sizemore sexually acted out at least 100 times.  Since his transfer to Big Muddy River Correctional Center, Sizemore had "sexually acted out with at least four individuals."  

Dr. Carich stated that Sizemore's characteristics included lack of remorse and empathy, lying or distorting infor

mation, sadistic and deceptive tendencies, exploiting and victim

izing others, and engaging in superficial relationships.  Sizemore's sadistic tendencies were evident in his coercion and sexual assaults of children and in 1995, when he attempted to rape another sexually dangerous person.  Sizemore was placed in segregation for the attempt (rape).  Dr. Carich reported that Sizemore was self-centered, very grandiose, a pathological liar, and irresponsible and had poor impulse control, an explosive temper, and a shallow, flat effect.

Dr. Carich concluded that Sizemore was sexually danger

ous and "pretty far away" from obtaining conditional release.  Sizemore's attendance in treatment was inconsistent, and he received numerous "program tickets" in 1996 and 1997 for not participating in and attending the treatment program.  Dr. Carich agreed that in the 10 to 12 months preceding the hearing, Sizemore had made progress by regularly attending and participat

ing in group therapy.
  
In late July 1998, however, Sizemore was suspended for 30 days from the program because he accumulated a number of incident reports for disciplinary violations. 

Dr. Carich stated that as of August 1998, Sizemore "appeared to be much more motivated than he has ever been in treatment and his commitment has improved, [but] he appears to be faking recovery."  Sizemore refused to assume responsibility for his offenses and attributed them to the fact that he was molested as a child and stated that he offended "out of revenge."  Accord

ing to Dr. Carich, Sizemore had never resolved those issues.  In addition to assuming responsibility for his behaviors, Sizemore needed to determine his sexual identity, develop and demonstrate consistent victim empathy and remorse, and develop more social skills and meaningful relationships.  Sizemore could verbalize the assault cycle, but could not apply it to himself.  Sizemore could not identify when he was in the cycle and what to do to break it.  Once Sizemore had achieved these goals, he would be eligible for the relapse-intervention program to determine what triggered his assault cycle and what preventative measures to take in high-risk situations.   

Dr. Carich stated that Sizemore was preoccupied with obtaining release rather than not offending, which was indicative of his impulsivity and irresponsibility.  Dr. Carich admitted a significant difference existed between Sizemore's phallometric assessment scores when he was first tested in 1997 and when he was retested in May 1998.  Sizemore's first assessment revealed very high arousal in certain areas, whereas the second assessment showed very little arousal, which would indicate that he had more control and had made some improvement.  Dr. Carich stated that Sizemore had made "remarkable improvement" in disciplinary matters, possibly because he was maturing.   Despite these areas of improvement, Carich concluded that Sizemore was still at a high risk to reoffend if conditionally released.

D. The Circuit Court's Ruling

After hearing the evidence, the court denied Sizemore's petition, stating:

"In order to prevail upon an applica-

tion showing recovery, the defendant bears

the burden of proof by a preponderance of

the evidence.

* * *

*** [W]e have differing opinions with respect 

to [Sizemore's release].  More specifically, 

Dr. Carich has testified that Mr. Sizemore is 

still, in his opinion, a sexually dangerous 

person.  Dr. Chapman, on the other hand, has 

suggested that Mr. Sizemore appears no longer 

to be dangerous, but it is impossible to 

determine with certainty under the current 

conditions of institutional care that Mr. 

Sizemore has fully recovered.

* * *

Dr. Carich was very specific in his tes-

timony about what the defendant would need to

do in order for him to reach the categoriza-

tion which Dr. Chapman believes the defendant

has reached.  And has identified no less--from

his testimony at least nine different cate-

gories, which I have notes concerning that.

Be [
sic
] requiring a total commitment by 

the defendant, having defendant accept full 

responsibility for his actions, be more con-

sistent with his victim empathy and/or remorse, 

to develop social skills, to know his cycle, 

not really verbalize it, to develop insight 

into his past history and the impact that 

that has upon his current and/or future be-

haviors, to develop a sexual identity, to 

learn appropriate interventions, and to feel 

better about himself.

Dr. Carich also testified that there 

have been remarkable improvements by the

defendant within the last nine months, and 

that that was a positive sign as far as the

defendant's progress, as far as his treatment

to date.

The court has a high amount of respect

for Dr. Chapman within his field, that being

Dr. Chapman has attained the level of being a

forensic psychiatrist.  But the concerns that

I have with Dr. Chapman's opinions are, one,

not having any specific facility, or, you

know, suggestions as to what the terms of con-

ditional discharge for the defendant would be

and, second, that Dr. Chapman--this is really

just kind of nature of the process--Dr. Chapman

met with Mr. Sizemore for two hours, and the

two-hour process also was without the benefit

of a valid MMPI.

On the other hand, we have Dr. Carich

who has dealt with the defendant for approxi-

mately 14 years.

DR. CARICH: Since '89.

THE COURT: I'm sorry.  Thought you said

since '85.  The last 9 years.  And Dr. Carich

has been able to enumerate and enunciate the

specific progress which Mr. Sizemore has made

and that yet which still needs to be made

while also voicing the ultimate opinion that

his opinion is that Mr. Sizemore still is a

sexually dangerous person.

In weighing, then, the testimony of the

two experts, the court finds the testimony

of Dr. Carich to be more persuasive, that the

court--and the court will find that the defen-

dant has failed to meet his burden of proof,

that being by a preponderance of the evidence,

to show that he is no longer a sexually dan-

gerous person."

The circuit court remanded Sizemore back to DOC.  Sizemore argues that the circuit court's denial of his petition was against the manifest weight of the evidence and is reversible error.  

IV. ANALYSIS

In the circuit court, Sizemore had the burden of establishing his entitlement to the relief requested by a prepon

derance of the evidence.  
People v. Sly
, 82 Ill. App. 3d 742, 747, 403 N.E.2d 72, 76 (1980).  On appeal, we will not substitute our judgment for that of the circuit court, as the circuit court is in the best position to assess the testimony of the witnesses.  
People v. McDougle
, 303 Ill. App. 3d 509, 518, 708 N.E.2d 482, 489 (1999).  We will only reverse the circuit court findings if they are against the manifest weight of the evidence.  The circuit court's findings are against the manifest weight of the evidence only when the opposite conclusion is clearly evident, plain, and indisputable.  
McDougle
, 303 Ill. App. 3d at 519, 708 N.E.2d at 489.

In support of his appeal, Sizemore notes "several aspects of [his] care and treatment *** which are cause for concern."  Sizemore argues that these aspects affected the circuit court's decision to accept Dr. Carich's opinion over that of Dr. Chapman.   

Initially, Sizemore attempts to blame his lack of recovery on the fact that DOC provided minimal treatment for sexually dangerous persons at Menard Psychiatric Center, where he was confined for 10 years.  Dr. Carich testified that the pro

grams offered for sexually dangerous persons at Menard's Psychi

atric Center were limited in comparison to those currently available.  However, as the State points out, Sizemore quit the treatment program in 1987, the year the program was improved by increasing the number of group sessions and supervising special

ists and decreasing the number of inmates in a group.  It is disingenuous for Sizemore to raise issues criticizing DOC's  treatment programs when he voluntarily opted not to participate for a seven-year period.

Sizemore also claims that DOC violated his rights by compelling him to sign a waiver of confidentiality and submit to polygraph tests during the course of treatment.  After reviewing the record, we find that neither party has provided sufficient evidence for us to adequately discuss these issues. We are unclear as to exactly what Sizemore's complaint is, as neither party presented evidence that he was required to waive all confidentiality to his records or that he was compelled to submit to polygraph tests as a prerequisite to receiving treatment.  Thus, we disregard these claims of error.     

Sizemore next claims that DOC is biased against releas

ing sexually dangerous persons and went to great lengths to oppose his release.  As evidence, Sizemore notes DOC's opposition and failure to comply with orders directing that he be trans

ported to Dr. Chapman's office for evaluation.  DOC did oppose the circuit court's order of December 17, 1997, requiring that Sizemore be transported to Dr. Chapman's office.  DOC filed a motion to quash, arguing that the order was invalid pursuant to Illinois law because it was issued for the convenience of Sizemore, his counsel, and Dr. Chapman.  Ultimately, a hearing was held and the order reaffirming the decision to transport Sizemore to Dr. Chapman's office for examination was approved by counsel for DOC.  

Sizemore argues that DOC's actions demonstrate its bias and intent to frustrate his petition for release by maintaining "exclusive control over any expert witness testimony" in sexually violent persons' cases.  Despite Sizemore's contentions, the record reflects that sexually violent persons do actually obtain release, some with the consent of DOC.  Dr. Carich testified that some sexually dangerous persons who were totally committed to the treatment programs obtained release within four years of their confinement.  Further, Dr. Carich testified that in 1998, he approved conditional release for five of the sexually dangerous persons in his program.    

We recognize that DOC failed to abide by a court order requiring it to transport Sizemore to court for the evidentiary hearing scheduled for July 10, 1998.  The hearing had to be continued due to DOC's error.  Although we disapprove of DOC's inaction, we find nothing in the record to support Sizemore's claims that this was intentional or done to prejudice his case. 

Sizemore also argues that Dr. Carich's opinions must be viewed with skepticism because Dr. Carich held no professional

licenses and would not have been qualified to express an opinion under section 4 of the Act that he was sexually dangerous.  725 ILCS 205/4 (West 1998).  Section 4 applies when a defendant is initially determined to be sexually dangerous.  Dr. Carich testified that the State of Illinois did not require profession

als working with sex offenders to be licensed, but that he was affiliated with the Illinois chapter of the Association of Treatment of Sexual Abuse.  Sizemore's contention that Dr. Carich would not have been qualified to render an opinion to ascertain whether he was sexually dangerous under section 4 of the Act is irrelevant in this proceeding, which stems from section 9 of the Act.  725 ILCS 205/9 (West 1998).  Section 9 specifically pro

vides that the report be prepared by the "psychiatrist, sociolo

gist, psychologist and warden of, or assigned to, the institution wherein such applicant is confined."  725 ILCS 205/9 (West 1998).  Dr. Carich worked as a psychologist for DOC for 13 years and coordinated the sex-offender treatment programs at various facilities.  We find that Dr. Carich was qualified to render an opinion that Sizemore was sexually dangerous and should not be conditionally released.

Sizemore's final argument is that the court improperly gave Dr. Carich's opinions more weight simply because Dr. Carich treated Sizemore for nine years, whereas Dr. Chapman had evalu

ated him in a single two-hour session.  In his reply brief, Sizemore argues that this was the "sole" reason that the circuit court found Dr. Carich to be more persuasive.  Sizemore claims that this scenario, "essentially concedes exclusive control over expert testimony to DOC *** since no private psychiatrist will ever have even a significant fraction of *** DOC's time with any particular defendant."    

We agree with the general proposition that it would be improper for the circuit court to accept Dr. Carich's opinions over those of Dr. Chapman simply because Dr. Carich spent more time with Sizemore.  As Sizemore points out, if that were permit

ted, DOC would have total control over the outcome of a sexually violent persons' petition for release.  Reversal would be proper if the circuit court made that factor, and that factor alone, outcome determinative.  However, that is not what happened here.  

Dr. Carich recognized that Sizemore had recently made significant strides in his treatment.  Dr. Carich, however, was also able to specifically articulate areas that needed additional improvement before Sizemore should be conditionally released.  The circuit court noted these areas when rendering its decision.  The fact that Dr. Carich spent more time with Sizemore than did Dr. Chapman was clearly considered, but that fact alone was not the basis for the circuit court's ruling.  In fact, the circuit court specifically informed Sizemore that, "Dr. Carich does not hold all the strings as far as you are concerned."  The court recognized Sizemore's "remarkable progress" in the past nine months, but noted the areas of improvement necessary prior to obtaining release.  Thus, the basis for the circuit court's ruling went well beyond the fact that Dr. Carich was more famil

iar with Sizemore.

V. CONCLUSION    

After reviewing the record, we find that the circuit court's ruling denying Sizemore's petition for recovery and/or conditional discharge was not against the manifest weight of the evidence.  The evidence presented did not lead to the indisput

able conclusion that Sizemore should have been conditionally released.  

For these reasons, we affirm the ruling of the circuit court. 

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.