THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. RICHARD A. KASTMAN, Respondent-Appellant.

Second District   No. 2—00—1425

Opinion filed October 28, 2002.

G. Joseph Weller and Kathleen J. Hamill, both of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the Court:

Respondent, Richard A. Kastman, appeals from the trial court's order denying his application for recovery pursuant to section 9 of the Sexually Dangerous Persons Act (the Act) (725 ILCS 205/9 (West 2000)). Respondent contends that the trial court erred when it (1) placed the burden of proof on him to show that he was no longer sexually dangerous, and (2) denied his motion to strike the State's sociopsychiatric report. Respondent also challenges the constitutionality of the Act and the sufficiency of the State's evidence. We reverse and remand.

In October 1993 respondent was charged by information with numerous acts of public indecency involving children and disorderly conduct. In November 1993 the State filed a petition to declare respondent a sexually dangerous person pursuant to section 3 of the Act (725 ILCS 205/3 (West 1992)). Following a jury trial, respondent was adjudicated a sexually dangerous person. The trial court ordered respondent committed to the Department of Corrections (the Department) until he had recovered from his mental disorders and was no longer considered sexually dangerous. Respondent appealed, and this

court affirmed his adjudication. See *People v. Kastman*, 2—94—0631 (1996) (unpublished order pursuant to Supreme Court Rule 23).

In July 1997 respondent filed a *pro se* application showing recovery and attached motions for an independent psychiatric examination, a jury trial, a speedy trial, and leave to proceed *in forma pauperis*. In October 1997 the State filed the Department's socio-psychiatric report on respondent as required by section 9 of the Act (725 ILCS 205/9 (West 1996)). The report was prepared and signed by correctional administrative psychologist Mark S. Carich, Ph.D.; psychiatrist Ijaz Jatala, M.D.; special treatment unit administrator Almeda L. Ball, M.S.W., C.A.D.C.; assistant warden/programs Allan R. Wisely; and warden Jack T. Hartwig. On October 31, 1997, the trial court conducted a hearing and denied respondent's motion for an independent psychiatric evaluation and his application showing recovery. The trial court did not rule on respondent's other motions.

Respondent appealed, and this court reversed the trial court's judgment and remanded the cause for further proceedings. See *People v. Kastman*, 309 Ill. App. 3d 516 (2000). We determined that the trial court committed reversible error when it proceeded to a hearing on respondent's application without addressing his jury demand or impaneling a jury. *Kastman*, 309 Ill. App. 3d at 519.

On October 8, 1999, during the pendency of the appeal, respondent filed another recovery application requesting release and motions to proceed *in forma pauperis*, for the appointment of counsel, for the appointment of an independent psychiatrist, for a speedy trial, and for a jury trial. The trial court ordered the Department to prepare a socio-psychiatric report in accordance with section 9 of the Act (725 ILCS 205/9 (West 1998)). On December 28, 1999, the Department filed its report dated December 7, 1999, and prepared and signed by correctional administrative psychologist Mark S. Carich, Ph.D.; psychiatrist Ijaz Jatala, M.D.; treatment counselor Kim Ford, M.S.W., L.C.S.W.; assistant warden/programs Allan R. Wisely; and warden Michael L. Holmes.

On February 22, 2000, respondent moved to strike the Department's socio-psychiatric report. In his motion, respondent challenged the credentials of the psychiatrist, sociologist, and psychologist, and the contents of the report itself. In April 2000 the trial court granted respondent's motion for leave to proceed *in forma pauperis*. On April 20, 2000, respondent moved again to strike the Department's socio-psychiatric report, claiming infirmities similar to those in his February 2000 motion to strike. For his relief, respondent requested the trial court, *inter alia*, to strike the report and order the Department to prepare a new report in compliance with section 9 of the Act.

On May 24, 2000, the State filed its response to respondent's motion to strike, and on June 1, 2000, the trial court conducted a hearing on respondent's motion to strike the socio-psychiatric report. Following the hearing, the trial court found that the Department's socio-psychiatric report failed to comply with the statutory requirements of section 9 in that five individuals signed the report when the statute mandated that only four sign. The trial court further found that no sociologist participated in the preparation of the report. The trial court also noted that, above the signature of the warden, Michael Holmes, there was impermissible limiting language reflecting that he only concurred in the administrative data contained in the report rather than participated in the preparation of the report. The trial court granted respondent's motion to strike and ordered the Department to prepare a new report in compliance with section 9 of the Act. On June 2, 2000, the trial court amended its June 1 order to include an additional finding that the socio-psychiatric report was deficient in that sections 2 and 3 of the Clinical Psychologist Licensing Act (225 ILCS 15/2, 3 (West 1998)) required that persons who hold themselves out to be psychologists must be licensed by the Department of Professional Regulation and that, in this case, Carich was not so licensed.

On June 20, 2000, the State filed a motion to reconsider the trial court's rulings of June 1 and 2, 2000. The State asserted that, pursuant to section 3(e) of the Clinical Psychologist Licensing Act (225 ILCS 15/3(e) (West 2000)), Carich was not required to be licensed. The State explained that, under section 3(e), psychologists are exempt from the licensing requirement when they are employed by a state agency and their services are a part of the duties of the position and are performed on behalf of the employer. See 225 ILCS 15/3(e) (West 2000). The State reasoned that, because Carich was employed by the Department of Corrections at Big Muddy Correctional Center (Big Muddy), a state agency, and because his duties included participating in the preparation of evaluations for sexually dangerous persons, he was exempt from the licensing requirement of section 3(e).

On June 30, 2000, the State moved to vacate the trial court's ruling on the socio-psychiatric report on an additional ground that, in *People v. Sizemore*, 311 Ill. App. 3d 917, 927-28 (2000), the reviewing court determined that Carich was qualified to participate as a psychologist in the preparation of a socio-psychiatric report under section 9 of the Act. Following a hearing on July 19, 2000, the trial court reversed its earlier rulings, finding that the December 1999 socio-psychiatric report complied with section 9 of the Act. On September 19, 2000, the trial court denied respondent's motion to reconsider.

On September 26, 2000, respondent waived his right to a jury

trial, and the cause proceeded to a bench trial. The trial court informed the parties that it intended to conduct a hearing on both of respondent's applications, that is, the application from July 1997, which had recently been remanded by this court, and the application from October 1999. The trial court stated that, since it was hearing both applications, it would consider both socio-psychiatric reports. The trial court and the parties all agreed that the burden of proof rested on the respondent to prove by a preponderance of the evidence that he was no longer sexually dangerous.

Respondent testified on his own behalf in support of his application for recovery. Following his testimony, respondent rested his case. The State's sole witness was Carich. Following Carich's testimony and the parties' closing argument, the trial court issued its ruling. The trial court reiterated that the burden of proof was on respondent and ruled that respondent failed to meet his burden. The trial court complimented respondent's counsel for doing a "masterful job" of "poking holes" in the socio-psychiatric reports, but stated that the "unrebutted fact is that the psychologist's report signed by the psychiatrist, *** the warden, and the social worker all believe that [respondent] is still sexually dangerous," and that respondent's "testimony has [not] overcome that factor." The trial court thereafter denied respondent's application. Respondent timely appeals following the trial court's denial of his posttrial motion.

■ Respondent initially contends that the trial court committed reversible error when it placed the burden on him to establish, by a preponderance of the evidence, that he was no longer sexually dangerous. In support of his contention, respondent cites *People v. Trainor*, 196 Ill. 2d 318 (2001), wherein our supreme court held that, upon a respondent's application showing recovery, the State bears the burden to prove beyond a reasonable doubt that the respondent remains sexually dangerous. *Trainor*, 196 Ill. 2d at 335. The State acknowledges the holding in the *Trainor* decision; however, it maintains that *Trainor* cannot be applied retroactively.

Generally, our supreme court's decisions apply to all cases that are pending when its decision is announced, unless the court directs otherwise. See *People v. Cox*, 195 Ill. 2d 378, 386 (2001), citing *People v. Linder*, 186 Ill. 2d 67, 75 (1999); but *cf. Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989) (discussing rules of retroactivity where a judicial decision announces a new constitutional rule of criminal procedure that is favorable to a defendant). The *Trainor* court did not direct that its decision be applied prospectively only. Therefore, because respondent's case was pending at the time the supreme court announced its decision in *Trainor*, we will apply it

to the present case. See also *People v. Sly*, 82 Ill. App. 3d 742 (1980) (applying a United States Supreme Court ruling retroactively to its case regarding a petition requesting release).

In *Trainor*, the respondent was adjudicated a sexually dangerous person in May 1984. In May 1998 he filed an application for recovery, and the Department filed its socio-psychiatric report. The State moved for summary judgment (see 735 ILCS 5/2—1005 (West 1998)), and the trial court granted the motion. The appellate court reversed, concluding that summary judgment was inappropriate for applications brought pursuant to the Act because it deprives a respondent of his "statutory method of regaining his liberty." *People v. Trainor*, 312 Ill. App. 3d 860, 862 (2000).

The State appealed, and our supreme court affirmed. See *Trainor*, 196 Ill. 2d at 343. In reaching its decision, the *Trainor* court reviewed the legislative purpose and intent in creating the Act, as well as the structure and language of the Act itself. With respect to recovery proceedings (725 ILCS 205/9 (West 1998)), the court construed the statute and considered it in conjunction with other provisions of the Act. The court noted the distinction between an initial "petition" filed by the State to commit a person believed to be sexually dangerous (725 ILCS 205/3 (West 1998)) and an "application" for recovery filed by a respondent requesting release (725 ILCS 205/9 (West 1998)). The court stated that, under a plain reading of the terms "applicant" and "respondent," a respondent "does not have the obligation to move forward with the evidence or to sustain the burden of proof during the recovery proceeding." *Trainor*, 196 Ill. 2d at 334-35. The *Trainor* court held:

> "Under a plain language reading of the Act, when the defendant/applicant files an application for recovery, this application triggers the requirement of a recovery hearing. At the recovery hearing, the defendant becomes a respondent and the State is the petitioner. The State, as the petitioner, must show, beyond a reasonable doubt, that the defendant/respondent is still sexually dangerous." *Trainor*, 196 Ill. 2d at 335.

■ In the present case, all of the parties agreed that the burden of proof should be levied upon respondent to show by a preponderance of the evidence that he no longer was sexually dangerous. Following the trial on respondent's application, the trial court reiterated this evidentiary burden and explicitly ruled that it had denied respondent's application because he had failed to overcome his burden. We recognize our prior cases that addressed a respondent's burden of proceeding and burden of proof in a recovery proceeding. See, *e.g.*, *People v. Coan*, 311 Ill. App. 3d 296 (2000); *People v. McDougle*, 303 Ill. App. 3d 509

(1999). We now must hold otherwise. See *People v. Goebel*, 284 Ill. App. 3d 618 (1996) (noting our obligation to follow supreme court precedent and our lack of authority to overrule or modify its decisions).

We therefore hold that the trial court erred when it placed the burden of proof on respondent to show that he was no longer sexually dangerous and accordingly reverse its judgment. See *People v. Wilson*, 199 Ill. App. 3d 792, 797 (1990) (stating that to "misstate the burden of proof ***, to any extent, compromises the fairness of the judicial process and shall not be tolerated"). On remand, the trial court should place the burden of proof on the State to show beyond a reasonable doubt that respondent remains sexually dangerous.

Despite the necessity of a new trial, we will address respondent's other issues that may arise upon retrial. Respondent contends that the trial court erred when it denied his motion to strike the socio-psychiatric report. He argues that the Department's report failed to comply with the statutory requirements of section 9 of the Act in that (1) the report was prepared by Carich, who is not a licensed clinical psychologist, and (2) no sociologist participated in its preparation.

■ Whether section 9 of the Act requires that the psychologist hold a license and whether it requires the participation of a "sociologist" and not any other type of sociological professional to prepare the socio-psychiatric report are questions that involve statutory interpretation. As such, these are questions of law that this court reviews *de novo*. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002); *People v. McVeay*, 302 Ill. App. 3d 960, 964 (1999). Our primary objective in construing the meaning of a statute is to ascertain and give effect to the intent of the legislature. *Lieberman*, 201 Ill. 2d at 307. Legislative intent is determined by first examining the language of the statute, which is " 'the most reliable indicator of the legislature's objectives in enacting a particular law.' " *Lieberman*, 201 Ill. 2d at 308, quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). We accord statutory language its plain, ordinary, and popularly understood meaning, and we afford the language the fullest, rather than narrowest, possible meaning to which it is susceptible. *Lieberman*, 201 Ill. 2d at 308. Further, because all provisions of an enactment are viewed as a whole, this court will not construe words and phrases in isolation but interpret them in light of other relevant provisions of the statute. *Lieberman*, 201 Ill. 2d at 308. With these general principles in mind, we will turn to the statute at issue.

■ Section 9 of the Act provides in relevant part:

"An application in writing setting forth facts showing that such

sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. Upon receipt thereof, the clerk of the court shall cause a copy of the application to be sent to the Director of the Department of Corrections. The Director shall then cause to be prepared and sent to the court a socio-psychiatric report concerning the applicant. The report shall be prepared by the psychiatrist, sociologist, psychologist and warden of, or assigned to, the institution wherein such applicant is confined." 725 ILCS 205/9 (West 1998).

The State counters that the plain language of section 9 of the Act does not mandate that a licensed clinical psychologist prepare the report, only that the person is required to be a psychologist employed by or assigned to the institution where the applicant is confined. The State further argues that Carich is exempt from the licensing requirement under section 3(e) of the Clinical Psychologist Licensing Act (225 ILCS 15/3(e) (West 1998)). With respect to the absence of a sociologist, the State explains that the Department of Corrections at Big Muddy has not employed a sociologist for more than 20 years and has not been assigned one. The State further explains that the services formerly performed by sociologists are now provided by correspondence counselors, psychologists, social workers, or other health care professionals. The State cites *People v. Cooper*, 199 Ill. App. 3d 985 (1990), to show that, in other cases, courts have accepted individuals with designations other than "sociologist" to satisfy the statutory requirement.

Section 9 specifically provides that the socio-psychiatric report be prepared by the "psychiatrist, sociologist, psychologist and warden of, or assigned to, the institution wherein such applicant is confined." 725 ILCS 205/9 (West 1998). The plain language of section 9 does not mandate that the psychologist be licensed pursuant to the Clinical Psychologist Licensing Act (225 ILCS 15/1 *et seq.* (West 1998)). We note that, although the Act provides a definition of "qualified psychiatrist" (725 ILCS 205/4.01 (West 1998)), the Act is silent with respect to a definition of "psychologist" or the requisite qualifications to participate in the preparation of the socio-psychiatric report. Had our legislature wished to include a definition or a licensing requirement or a mere reference to the Clinical Psychologist Licensing Act, it could have done so. See 405 ILCS 5/3—504 (West 2000) (regarding the emergency admission of minors to a mental health facility); 725 ILCS 5/102—21 (West 2000) (defining "clinical psychologist" for purposes of the Code of Criminal Procedure of 1963); 730 ILCS 5/3—10—5 (West 2000) (transferring a person committed to the Juvenile Division with consent to the Department of Human Services under the Unified Code

of Corrections). We decline to depart from the plain language of section 9 and impose a licensing condition not expressed by the legislature. See *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10 (2001), citing *People v. Wright*, 194 Ill. 2d 1, 29 (2000) (stating that courts may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature). Accordingly, we hold that section 9 of the Act does not require that the psychologist hold a license.

Moreover, section 3(e) of the Clinical Psychologist Licensing Act obviates the necessity of a license for an individual employed by a state agency to perform the duties of a psychologist. See 225 ILCS 15/3(e) (West 2000). Section 3(e) of the Clinical Psychologist Licensing Act provides:

> "Nothing in this Act shall be construed to limit the services and use of official title on the part of a person, not licensed under the provisions of this Act, in the employ of a State, county or municipal agency or other political subdivision insofar that such services are a part of the duties in his or her salaried position, and insofar that such services are performed solely on behalf of his or her employer." 225 ILCS 15/3(e) (West 2000).

In the present case, because Carich receives no remuneration for his psychological services other than his salary and because his socio-psychiatric reports are prepared solely on behalf of the Department, he is exempt from the statutory licensing requirement.

Because we are remanding this cause for a new hearing, we caution the trial court that, despite our holding that section 9 does not require the participation of a licensed psychologist, it must nevertheless ensure that the individual participating in the preparation of the socio-psychiatric report as the "psychologist" is qualified to prepare the report and to render an opinion. When a respondent challenges the qualifications or credentials of an individual participating in the preparation of the report, the State must establish the foundational basis or bases by which it believes the report is in compliance with section 9 of the Act. The trial court must then consider the individual's educational and professional background and not merely "rubber stamp" the authenticity or validity of the report.

In the present case, the record reflects that Carich earned a B.S. in psychology from Southern Illinois University, an M.A. in education from the counseling program from St. Louis University, and a Ph.D. in education with a concentration in marriage and family therapy from St. Louis University. His *curriculum vitae* reflects that he has spent much of his 15-year professional career working with persons found to be sexually dangerous or other types of sexual offenders. From this

information the trial court on remand can make a reasoned decision regarding the report itself, after which it shall accord the report appropriate weight and use it to determine whether the State has proved beyond a reasonable doubt that respondent remains sexually dangerous. We note that, in *People v. Sizemore*, 311 Ill. App. 3d 917, 927-28 (2000), the reviewing court found that Carich was qualified to render an opinion that the applicant was sexually dangerous and should not be conditionally released. We also note that Carich was the primary author of the applicant's socio-psychiatric report in *People v. Trainor*, 312 Ill. App. 3d 860 (2000), *aff'd*, 196 Ill. 2d 318 (2001).

We turn next to the second part of respondent's argument concerning the statutory necessity of the participation of a "sociologist" in the preparation of the socio-psychiatric report. Both parties correctly note that "sociologist" is not defined in the Act, nor is it defined anywhere within our state's compilation of statutes. However, we must presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience, or injustice. *Lieberman*, 201 Ill. 2d at 309. " 'Statutes must be construed in the most beneficial way which their language will permit so as to prevent hardship or injustice, and to oppose prejudice to public interests.' " *Lieberman*, 201 Ill. 2d at 309, quoting *Mulligan v. Joliet Regional Port District*, 123 Ill. 2d 303, 313 (1988).

In *Trainor*, our supreme court outlined the history of the Act, beginning with the legislature's creation of a civil commitment statute for sex offenders in 1938. *Trainor*, 196 Ill. 2d at 324. Section 9 was amended in 1963 to include the requirement that a psychiatrist, sociologist, psychologist, and warden prepare the socio-psychiatric report. *Trainor*, 196 Ill. 2d at 324, citing Ill. Rev. Stat. 1963, ch. 38, par. 105—9. Despite the amendment, the General Assembly left undefined the term "sociologist" and did not specify the individual qualifications that a sociologist should possess.

Generally, a "sociologist" conducts research into the development, structure, and behavior of groups of human beings and patterns of culture and social organization which have arisen out of group life in society. Dictionary of Occupational Titles, 054.067-014 (4th ed. 1991). A sociologist may teach sociology, direct research, prepare technical publications, or act as a consultant. A sociologist may also specialize in research on social problems arising from individual or group deviation from commonly accepted standards of conduct, such as crime and delinquency, or research on social factors affecting health care, including definition of illness, patient and practitioner behavior, social epidemiology, and delivery of health care. Dictionary of Occupational Titles, 054.067-014 (4th ed. 1991).

"Clinical social work practice," as defined in the Clinical Social Work and Social Work Practice Act (the Social Work Act) (225 ILCS 20/1 *et seq.* (West 2000)), means "the providing of mental health services for the evaluation, treatment, and prevention of mental and emotional disorders in individuals, families and groups based on knowledge and theory of psychosocial development, behavior, psychopathology, unconscious motivation, interpersonal relationships, and environmental stress." 225 ILCS 20/3(5) (West 2000). A "licensed clinical social worker" means "a person who holds a license authorizing the independent practice of clinical social work in Illinois under the auspices of an employer or in private practice." 225 ILCS 20/3(4) (West 2000). A "licensed social worker" means "a person who holds a license authorizing the practice of social work, which includes social services to individuals, groups or communities in any one or more of the fields of social casework, social group work, community organization for social welfare, social work research, social welfare administration or social work education." 225 ILCS 20/3(9) (West 2000).

■ As we previously stated, in construing the meaning of section 9 of the Act, our primary objective is to ascertain and give effect to the legislature's intent. See *Lieberman*, 201 Ill. 2d at 307. To this end, " ' " [w]here the spirit and intent of the General Assembly in adopting an act are clearly expressed and its objects and purposes are clearly set forth, courts are not bound by the literal language of a particular clause which would defeat the obvious intent of the legislature." ' " *Lieberman*, 201 Ill. 2d at 312, quoting *People v. McCoy*, 63 Ill. 2d 40, 45 (1976), quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n*, 42 Ill. 2d 385, 395 (1969). The purpose of the Act is (1) to protect the public by sequestering a sexually dangerous person until such a time as the individual is recovered and released, and (2) to subject sexually dangerous persons to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated. *Trainor*, 196 Ill. 2d at 323-24, citing *People v. Cooper*, 132 Ill. 2d 347, 355 (1989).

■ The Act defines "sexually dangerous persons" as those suffering from a mental disorder, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children. 725 ILCS 205/1.01 (West 1998). Our legislature specifically intended that sexually dangerous persons be subjected to treatment so they may recover and not commit future offenses. Licensed clinical social workers provide those necessary services to evaluate, treat, and prevent those disorders in persons found to be sexually dangerous. Given the absence of a definition of "sociologist" by our legislature,

considering the definition of "sociologist" from the Dictionary of Occupational Titles, and reviewing the statutory definitions of "clinical social work practice," "licensed clinical social worker," and "licensed social worker," we determine that the occupational title of one who is engaged in the practice of social work is subsumed by the much larger, all-encompassing occupational title of "sociologist."

Our determination is supported by courts of review that have considered cases in which the socio-psychiatric reports did not bear the designated "sociologist" signature. See *Trainor*, 196 Ill. 2d at 321 (noting that the socio-psychiatric report was signed by the Department's administrative psychologist, psychiatrist, a social service worker, the assistant warden, and the warden at the Department of Corrections at Big Muddy); *People v. Cooper*, 199 Ill. App. 3d 985 (1990) (reflecting that a psychiatrist, a psychological administrator, a clinical services supervisor, and the administrator of the psychiatric center prepared the socio-psychiatric report). Respondent's interpretation seeks to place form over substance; we reject his interpretation.

Accordingly, we hold that the term "sociologist" as used in section 9 of the Act includes within it professionals who perform social work, and these sociological professionals may properly participate in the preparation of the socio-psychiatric reports. We reiterate our earlier admonition to the trial court, though, that, upon a respondent's challenge, it must nevertheless ensure that the individual participating in the preparation of the socio-psychiatric report as the "sociologist" is qualified to prepare the report and render an opinion.

Next, respondent contends that the Act is unconstitutional based on the recent United States Supreme Court ruling in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002). Respondent asserts that the Act violates *Crane* because it does not require the State to prove beyond a reasonable doubt that the alleged sexually dangerous person has a serious difficulty in controlling behavior. Respondent argues that, because no finding has ever been made that he has serious difficulty controlling his behavior, his adjudication and detention have been without due process of law.

In *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), the United States Supreme Court set forth the requirements of substantive due process as applied to a Kansas statute providing for the civil commitment of sexual offenders. The Kansas statute provided for the civil commitment of a person who " 'has been convicted of or charged with a sexually violent offense,' " and " 'suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.' " *Hendricks*, 521 U.S. at 352, 138 L. Ed. 2d at 509, 117 S. Ct. at 2077,

quoting Kan. Stat. Ann. § 59—29a02(a) (1994). The *Hendricks* court concluded that the Kansas statute was narrowly drawn because it restricted commitment to those individuals who have "a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated." *Hendricks*, 521 U.S. at 357-58, 138 L. Ed. 2d at 512, 117 S. Ct. at 2080. Although the Court concluded that a finding of dangerousness alone was insufficient grounds for a civil commitment, the Kansas statute also required proof of "mental abnormality." *Hendricks*, 521 U.S. at 357-58, 138 L. Ed. 2d at 512-13, 117 S. Ct. at 2080. This requirement saved the statute because it limited civil commitment to those "who suffer from a volitional impairment rendering them dangerous beyond their control." *Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 513, 117 S. Ct. at 2080.

■ The Supreme Court recently reaffirmed and clarified the *Hendricks* decision in *Kansas v. Crane*, 534 U.S. 407, 151 L. Ed. 2d 856, 122 S. Ct. 867 (2002). The Supreme Court of Kansas had interpreted the *Hendricks* decision as requiring the State to "always *** prove that a dangerous individual is completely unable to control his behavior." (Emphasis omitted.) *Crane*, 534 U.S. at 411, 151 L. Ed. 2d at 861, 122 S. Ct. at 869. While the *Crane* court rejected this formulation as too rigid, it nevertheless held that a showing of serious difficulty in controlling behavior was required. *Crane*, 534 U.S. at 412-13, 151 L. Ed. 2d at 862, 122 S. Ct. at 870. The *Crane* court, however, refrained from stating exactly what proof the State must present to demonstrate lack of control. *Crane*, 534 U.S. at 413-14, 151 L. Ed. 2d at 862-63, 122 S. Ct. at 870. Whatever the proof may be, though, it must "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects [her or] him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 870.

■ In the present case, respondent argues that the Act falls short of the *Hendricks* and *Crane* requirements because it does not define "mental disorder" and does not include language which can be construed as requiring a "lack of control" finding. However, the fact that the Act does not explicitly define "mental disorder" or include "lack of control" language is not fatal to its validity. Although the *Hendricks* case clearly requires a finding that the individual suffers from a present mental condition that creates a likelihood that the individual will engage in sexually dangerous conduct in the future (*Hendricks*, 521 U.S. at 358, 138 L. Ed. 2d at 512-13, 117 S. Ct. at 2080), it does not demand the use of a specific term to describe the mental condition. *Hendricks*, 521 U.S. at 359, 138 L. Ed. 2d at 513,

117 S. Ct. at 2080 (stating that "the term 'mental illness' is devoid of any talismanic significance"). Therefore, in the present case, the Act meets the *Hendricks* requirements if it implicitly requires this finding, even if it does not define the specific term "mental disorder" or set out "lack of control" as an element.

Here, too, while the Act does not explicitly mandate a determination regarding a respondent's ability to control herself or himself, it does provide that the court find that a respondent suffers from a mental disorder, the mental disorder has existed for more than one year, and respondent exhibits behavior indicating "criminal propensities to the commission of sex offenses," and has "demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children." 725 ILCS 205/1.01 (West 2000). This language fulfils the *Hendricks* requirement that the individual suffer from a present mental condition and, furthermore, exceeds the *Hendricks* requirement in that the Act also requires that the individual has suffered from that mental condition in excess of one year. The language of the Act requires that the State demonstrate a continuing likelihood that the individual will reoffend. To make this showing, the State must establish that the individual presently suffers from a mental condition coupled with criminal propensities to commit sex offenses and has in the past demonstrated propensities to commit sex offenses, rendering her or him likely to continue to commit sexual offenses in the future. While this condition may often correlate with one or more clinically defined mental disorders, the statute does not require express proof of a clinically defined mental illness, nor does the Constitution require that it do so. See *Hendricks*, 521 U.S. at 359, 138 L. Ed. 2d at 514, 117 S. Ct. at 2081 (stating that "[l]egal definitions *** need not mirror those advanced by the medical profession"). *Crane* reaffirms that because "the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law," "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules." *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 863, 122 S. Ct. at 871.

A reviewing court has a duty to construe a statute in a manner that upholds its constitutionality, if that can be reasonably done. *People v. Fisher*, 184 Ill. 2d 441, 448 (1998). In the present case, we conclude that the language in the Act clearly presumes a serious difficulty in controlling behavior: if a person cannot control her or his dangerous behavior to the extent that she or he is predisposed to commit criminal sexual acts and thus endangers others, then the person has sufficient

volitional impairment to be found a sexually dangerous person. Such a person is different from one who has a predisposition to commit crime but chooses not to be law-abiding. Accordingly, an expert's testimony that a respondent's mental disorder affected her or his volitional capacity to the extent that she or he is likely to reoffend is sufficient to support a finding of "serious difficulty in controlling behavior." See *Crane*, 534 U.S. at 413, 151 L. Ed. 2d at 862, 122 S. Ct. at 870. Inasmuch as respondent is the party challenging the constitutionality of a statute, he bears the burden of clearly establishing the constitutional violation. See *People v. Wright*, 194 Ill. 2d 1, 24 (2000); *In re Detention of Allen*, 331 Ill. App. 3d 996, 1003 (2002). Upon our review of the issue presented, we determine that respondent has failed to satisfy his burden. See also *People v. Hancock*, 329 Ill. App. 3d 367 (2002) (upholding the constitutionality of the Act).

Because this case is being remanded for a new trial on respondent's application, we need not consider respondent's issue concerning the sufficiency of the evidence. See *People v. Whitney*, 33 Ill. App. 3d 729 (1975) (noting that the trial court or jury, and not the reviewing court, should be the judicial body making the finding that a person is sexually dangerous).

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand the cause for further proceedings.

Reversed and remanded.

BOWMAN and KAPALA, JJ., concur.